| .EDWARDS, Judge.
Mr. Troy Mendoza appeals the judgment of the trial court finding that he had forfeited his right to worker’s compensation benefits by willful misrepresentations to obtain benefits. Mr. Mendoza filed an action for benefits against Stewart & Associates Electricians, alleging that he lost his balance on a ladder at work, fell six feet onto a computer main frame and then to the floor. He averred that he suffered a back injury which prevents his return to *739 employment. State Farm Fire & Marine Insurance Company is the compensation insurer for Stewart. For the following reasons we affirm.
The following facts were adduced at trial from the testimony as well as from medical records admitted into evidence. The only witness to testify was Mr. Mendoza. He stated that the accident occurred on March 26, 1999, and that he first saw his family physician, Dr. George Guzzardo, on March 30, 1999. Dr. Guzzardo prescribed bed rest, pain medication, and ordered x-rays. Dr. |3Guzzardo explained that the x-rays showed spondylolisthesis, a congenital back defect, and diagnosed lumbar strain. Mendoza was subsequently referred to an orthopedic surgeon, Dr. John Cazale, whom he saw on April 22. Dr. Cazale agreed on the diagnosis of spondylolisthe-sis and also suggested bed rest, and ordered a bone scan and an MRI. Mendoza underwent physical therapy for three months as recommended by those physicians. At one point during therapy, he felt a pop and then a sharp pain in his back, and was advised by Dr. Cazale to stop the exercises. Dr. Cazale reported that he did not see where anything could have gone wrong just doing stretching exercises. He felt that it would be difficult to get Mr. Mendoza to go back to work.
Dr. Cazale’s report indicated that he found Mr. Mendoza’s complaints to be out of proportion to the physical findings and diagnostic studies. He referred him to a neurosurgeon to rule out other problems. Dr. Richard Corales, a neurosurgeon, examined the bone scan and MRI. Dr. Corales found no explanation for Mr. Mendoza’s symptoms or evidence of any abnormality other than the spondylolis-thesis. He recommended a nerve conduction test and an EMG to assure there was no neuropathic process. The EMG showed no denervation and the nerve conduction studies were normal. He also prescribed a nerve medication, and as of October 19, 2000, had not released Mr. Mendoza for work.
Dr. Corales did not recommend surgery, but did state that Mr. Mendoza was an excellent candidate for pain management treatment. Dr. Gary Glynn, a pain management specialist, began treating Mr. Mendoza in September of 1999. Steroid injections were administered into his back over a period of time, but these shots offered no relief. In January of 2000, new pain medication was prescribed along with a muscle relaxer.
| ¿Mr. Mendoza was referred to a psychologist, Dr. Kevin Bianchini. Dr. Bian-chini felt that Mr. Mendoza’s personality profile was linked with certain psychological factors contributing to and/or augmenting physical symptoms. According to Dr. Bianchini, this did not appear to be purposeful, that is, he did not appear to be malingering.
Dr. Glynn was sent a Functional Capacities Checklist by Jennifer Palmer and Associates, a Vocational Rehabilitation company engaged by State Farm. Dr. Glynn’s response showed that Mr. Mendoza could do some part time sedentary work and lift light weights, and that he was physically able to perform certain jobs. Mr. Mendoza testified that Dr. Glynn did not ask him about the evaluation. In June, 2000, Dr. Glenn felt that Mendoza would reach maximum medical improvement in two or three months. In September, Dr. Glenn recommended a limited course of psychological intervention, and opined that “psychological issues have created a hindrance.”
After compensation was discontinued, Mr. Mendoza saw Dr. Murphy in Houston who agreed to give a second opinion at no charge. Dr. Murphy also diagnosed spon-dylolisthesis and a bulging disc. After a myelogram and CAT scan, Dr. Corales *740 opined that Mr. Mendoza could not work, and that surgery was his only remaining option. Mr. Mendoza saw Dr. Cazale again, who suggested he wear a brace before having surgery. If the brace did not help, then surgery might be of benefit.
Mr. Mendoza was referred to Dr. Frank Culicchia for an independent medical examination. Dr. Culicchia agreed with the previous diagnoses of spondylolisthesis and as all other measures had been exhausted, stated that fusion at the L5-S1 level could be attempted although he was hesitant to recommend it.
| ¡After receiving a letter from Jennifer Palmer & Associates, the Vocational Rehabilitation company, Mr. Mendoza wrote to his attorney that he was unhappy with the types of jobs which his doctor stated he was physically able to perform, such as a store manager trainee, automotive sales, and automobile rental agent, even though he had previously been employed in some of those occupations.
Mr. Mendoza testified on direct examination that he injured his back playing basketball 15 years earlier. At that time his family doctor x-rayed him a diagnosed a sprain, prescribed medication and bed rest. It has not bothered him since then. On cross-examination, Mr. Mendoza testified that the only back treatment he had previously had was for the basketball incident. He did not tell his other doctors about it because he did not consider it a previous “back problem” since it was gone within a week. Mr. Mendoza reviewed his answers to interrogatories propounded by State Farm relative to injuries or illnesses in the previous ten years. In those answers he stated that during that period of time, he had several episodes, including chest pains, a pulled groin muscle, the flu, and an inner ear infection. Mr. Mendoza also admitted that when specifically asked in his deposition if he had been involved in any automobile accidents in which he was injured, he responded that he had not.
State Farm produced a report from Browne-MeHardy Clinic which showed that Mr. Mendoza had been in an auto accident on August 14, 1995, and had suffered neck, shoulder, and back pains. Mr. Mendoza recalled that he was treated for one week at that time, that he had recovered from it, and stated that he did not think about the 1995 accident at the time discovery was conducted. The x-ray report generated at that time showed spon-dylolisthesis with mild posterior narrowing of lumbosacral disc space. Also produced were other, earlier | ^documents from Browne-MeHardy Clinic showing that Mr. Mendoza had suffered a lumbar strain in December of 1989. An x-ray with negative results was taken at that time. In February of 1992, he again complained of back pain at Browne-MeHardy. In February 1993, an x-ray was taken showing grade one spondylolisthesis at L5-S1. Mr. Mendoza did not recall these visits.
Mr. Mendoza specifically denied any pri- or history of back problems to Drs. Guz-zardo, Cazale, Glynn, and Bianchini. Dr. Murphy stated that Mr. Mendoza reported no prior history of a lumbar complaint, and felt that the injury is a direct result of the fall, “given [hisjasymptomatic history.” Following the submission of post-trial memoranda, the trial court granted judgment finding that Mr. Mendoza was injured in a work-related accident, but that he forfeited his right to compensation after May 26,2000, by willful misrepresentation to obtain benefits. No reasons for judgment were given.
On appeal, Mr. Mendoza avers that State Farm terminated his benefits on May 25, 2000, because Dr. Glynn indicated that he was capable of some jobs. Mr. Mendoza claims this termination was arbitrary and capricious because State Farm *741 had not even received the questionnaire filled out by Dr. Glynn until June 1, 2000. Mr. Mendoza also claims that he made no willful misrepresentations, but rather explained at trial that the injuries he received in the accident were negligible, and that he had simply forgotten about it. The other three incidents of back pain and treatment he characterizes as insignificant.
In a worker’s compensation case, as in other cases, the appellate court’s review is governed by the manifest error or clearly wrong standard.[1]
| ./Therefore, a factual finding cannot be set aside unless the appellate court finds that it is manifestly erroneous. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder’s, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.[2]
With regards to the claimant’s assertions on appeal, La. R.S. 23:1208 provides in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
[[Image here]]
E. Any employee violating this Section shall, upon determination by workers’ compensation judge, forfeit any right to compensation benefits under this Chapter.
In discussing the statute, the Louisiana Supreme Court has noted that it is broadly worded, and does not require that an employee be put on notice of the consequences of making false statements.[3] The only requirements for forfeiture of benefits under R.S. 23:1208 are that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment.[4] Section 1208 applies to any false statements or representations, including those concerning prior injuries, and the |semployer need not show that it has been prejudiced as a condition of forfeiture.[5] The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits.[6] Because § 1208 is penal in nature, it must be strictly construed, both in its substantive ambit and in its penalty provisions.[7] False statements that are inadvertent or incon *742 sequential will not result in forfeiture.[8] Further, it is well settled that the factual findings of a workers’ compensation judge may not be set aside unless those findings are clearly wrong in light of the record reviewed in its entirety.[9] In brief, Mr. Mendoza cites several cases in which the appellate courts agreed with the compensation judges that certain statements by employees were not willfully made for the purpose of obtaining benefits, and one case in which the appellate court reversed to find that the requisite intent was not present.[10] Our examination of those cases and other jurisprudence on this subject reveals that the courts have properly considered each case on the individual facts presented to them on the record as a whole, and on credibility findings. Determination of the willfulness of false statements made by claimants is largely | gdependent on the trial court’s assessment of the claimant’s credibility.[11]
In the present case, Mr. Mendoza has a history of back problems for which he sought medical treatment on several occasions, and which he did not disclose during treatment by his physicians, in discovery, or during the hearing until the information was elicited on cross-examination. The judge, without comment, found that he had the requisite intent and after our examination of the record as a whole we see no manifest error in such finding.
Here, Mr. Mendoza disclosed one incident which happened to him as a teenager playing basketball, which he apparently considered significant enough to mention, but failed to declare an automobile accident in which he injured his back approximately only four years prior to the work-related accident. In addition, he sought treatment for back pain on at least two other occasions of which he claimed to have no memory, yet recalled other medical problems which he disclosed, such as having tubes in his ears as a child, and having flu-like symptoms. In his defense, Mr. Mendoza avers that the injuries for which he sought treatment were insignificant and not remotely similar, and were not really “previous back problems.” Mr. Mendoza has exhibited a pattern of forgetting to mention several problems, all relating only to his back, to a number of physicians treating him for an injury in on that portion of his body; of forgetting the occurrence of an automobile accident with injury to his back, both in his deposition as well as to the court. It is clear from the ruling that the court did not find Mr. Mendoza’s |intestimony on this issue credible. Given the evidence presented, we cannot say the court was manifestly erroneous in finding that he intended to make willful misrepresentations in order to obtain benefits.
*743 The false statements in question go to the heart of the issue of the causation and extent of Mr. Mendoza’s present injuries, and cannot be considered either inadvertent or inconsequential. The consensus of medical opinion is that his symptoms could not be explained. Where the false statements are made specifically to obtain benefits, and thus to defraud the workers’ compensation system, the benefits will be forfeited for the sole reason that the claimant has willfully and deliberately attempted to defraud the workers’ compensation system, and no further requirements are to be imposed.[12]
Because we agree that Mr. Mendoza forfeited his benefits under R.S.23:1208, State Farm was not arbitrary and capricious in denying benefits after May 26, 2000.
For the foregoing reasons the judgment is affirmed. Mr. Mendoza is assessed all costs of appeal.
AFFIRMED.

. Woodrum v. Olive Garden Restaurant, 99-130 (La.App. 5th Cir.5/19/99), 735 So.2d 911, 920.

. Banks v. Jack Jackson, Inc. 01-3 (La.App. 5th Cir.5/30/01), 788 So.2d.709; Woodrum v. Olive Garden Restaurant, supra.

. Resweber v. Haroil Const. Co., 94-2708 (La.9/5/95), 660 So.2d 7, 12; Tuminello v. Girling Health Care Inc., 98-977 (La.App. 5th Cir. 1/26/99), 731 So.2d 316, 318.

.Resweber v. Haroil Const. Co., supra; Cole v. Drainage Dist. of Parish of Jefferson, 99-1411 (La.App. 5th Cir.4/25/00), 760 So.2d 529, 531.

. Resweber v. Haroil, supra; Hernandez v. ESKCO, Inc. 2000-0174 (La.App. 4th Cir.11/15/00), 773 So.2d 865.

. Tuminello v. Girling Health Care Inc., supra.

. Louisiana Workers’ Compensation Corp. v. Gray, 34,731 (La.App. 2nd Cir.5/9/01), 786 So.2d 310, 315; KLLM, Inc. v. Reed, 2000-295 (La.App. 3rd Cir.10/11/00), 771 So.2d 728, 731.

. KLLM, Inc. v. Reed, supra; Resweber v. Haroil Const. Co., supra.

. Cole v. Drainage Dist. of Parish of Jefferson, supra; Martin v. Olsten Indus. Services, 98-0463 (La.9/18/98), 718 So.2d 404.

. Ring v. Decor Gravure Corp., 99-1965 (La.App. 3rd Cir.6/7/2000), 768 So.2d 116; Marks v. 84 Lumber Co., 00-00322 (La.App. 3rd Cir. 10/11/00), 771 So.2d 751; Grant v. Natchitoches Manor Nursing Home, 96-1546 (La.App. 3rd Cir.5/14/97), 696 So.2d 73, 76, writ denied, 97-1582 (La.10/17/97), 701 So.2d 1330; and J.E. Merit Constructors, Inc. v. Butler, 97-361 (La.App. 5 Cir.1997), 700 So.2d 1111.

. See e.g. Reuben v. Tidewater Marine 97-527 (La.App. 5th Cir.5/13/98), 712 So.2d 263„ writ denied 98-C-1486 (La.9/4/98), 721 So.2d 916; Rivera v. West Jefferson Medical Center, 96-152 (La.App. 5th Cir.7/30/96), 678 So.2d 602; Smalley v. Integrity, Inc. 31,247 (La.App. 2nd Cir.12/9/98), 722 So.2d 332, writ denied 99-0072 (La.3/19/99), 739 So.2d 782. Harris v. Bancroft Bag, Inc. 30,431 (La.App. 2nd Cir.4/09/98), 714 So.2d 44; Varnado v. Winn-Dixie Louisiana, Inc., 98-0301 (La.App. 1st Cir.9/25/98), 720 So.2d 66.

. Resweber v. Haroil, supra.