ROBERT A. CHAISSON, Judge.
| gin this worker’s compensation case, Cajun Operating Company d/b/a/ Church’s Chicken, and The Hartford Insurance Company (“Cajun”), appeal a judgment in favor of the claimant, Patricia Mazique, awarding her benefits, penalties, and attorney fees. For the following reasons, we reverse the decision by the worker’s compensation judge in favor of Ms. Mazique, and enter judgment in favor Cajun, dismissing the claim.
FACTS AND PROCEDURAL HISTORY
Ms. Mazique was employed by Church’s Chicken on October 30, 2011, when she slipped and fell at work. She claimed to have injured her right knee, lower back and right hand. She testified that on that day the employer brought her to The Ochsner Medical Center for treatment, but there are no reports of this visit | sin the record.[1] Two weeks later, on November 14, 2011, she was seen on her own initiative by Dr. Daniel Gallagher of the Bone and Joint Clinic for subjective complaints of lower back and right knee pain. There is no mention in the record of that date of any injury to the right hand. After taking x-rays, Dr. Gallagher’s initial diagnosis was an aggravation of knee and spinal arthritis. He estimated that she would reach maximum medical improvement in two to four weeks. He released her for light duty and recommended a return visit in two weeks. Although the employer offered claimant light duty, she did not return to regular employment. She was also paid two weeks of compensation.
Dr. Gallagher’s office notes show that claimant missed five return appointments, either by rescheduling or simply not showing up. She was finally again seen on January 16, 2012. In his report on that visit, he stated that examination of the right hand was essentially normal, as was the x-ray image. The right knee and back were also x-rayed again and these showed severe osteoarthritis in the knee, and degenerative disc disease throughout the lumbar spine with osteoarthritis in the facet joints. His opinion was that he did not see any indication that there was any new injury in the fall that had occurred on the job, and he “explained to the patient that her continued pain is a result of her arthritis and degenerative disc.” He discharged her, noting that there was nothing more he could do to help her. In none of his notes is there any mention that Ms. Mazique had reported to him previous problems with her back and knee, but neither is there any indication that he had asked her about such problems.
Cajun agreed to have Ms. Mazique examined by yet another physician of her choice, Dr. Alexis Waguespaek, of the Spine Care Medical Group. The notes for |4the first visit of May 24, 2012, recite that Ms. Mazique gave a history of her complaints as being caused by her falling while *339 carrying a tray of chicken in the workplace. Dr. Waguespack’s impressions were lumbar sprain, degenerative disc disease, and slight degenerative scoliosis. At a subsequent visit on October 15, 2012, various tests were ordered, including x-rays and an MRI. The results of these various tests were reported in the notes to a follow-up visit of January 2, 2013. The diagnosis for the back was lumbar degenerative disc disease, scoliosis, myelopathy, stenosis, and radiculitis. The knee problems were tricompartmental arthropathy, chronic tear of the ACL, spurring, bursal cyst and other inflammation. The report of another visit on March 11, 2013, contains the same information. In none of Dr. Waguespack’s reports is there any opinion as to the causation of Ms. Ma-zique’s conditions, except to note the history given by Ms. Mazique. None of Dr. Waguespack’s notes indicate that Ms. Ma-zique ever mentioned prior problems, but again there was no direct question from Dr. Waguespack on this point.
The next medical report was an Independent Orthopaedic Report requested by Cajun from Dr. Robert Steiner, an ortho-paedic surgeon. Dr. Steiner reviewed the original Ochsner report of October 30, 2011, Dr. Gallagher’s and Dr. Wagues-pack’s reports, and the results of all of the tests conducted at their requests. He also had x-rays taken in his office of claimant’s back, right hand and right knee. Dr. Steiner notes particularly that “she denies prior problems with her low back or right knee.” His full opinion is as follows:
This patient’s diagnosis is osteoarthritis of the right knee, a pre-existing condition. Her prognosis is poor as she has severe osteoarthritis.
This patient’s diagnosis is multilevel degenerative lumbar disc disease. When I examined her she had inconsistent and nonphysiologic findings. There were no findings of lumbar radiculopathy. Her prognosis is poor.
| BShe also has some mild arthritic changes involving the 2nd metacarpo-phalangeal joint of the right hand. Prognosis is good. She requires no treatment for this condition.
As it related to her on the job injury, I do not see specific evidence of injury, only severe pre-existing degenerative changes. In light of the inconsistent and nonphysiologic findings noted on her exam it is impossible for any physician to state what, if any, portion of her condition was. aggravated by the incident in question.
The patient’s knee condition is severe. She ultimately will require knee replacement surgery. I would not relate the need for knee replacement surgery to the incident in question.
This patient has severe degenerative lumbar disc disease but in the absence of any objective neurologic findings and in the presence of inconsistent and non-physiologic findings, I feel that conservative management with nonnarcotic analgesic is most appropriate.
Due to the pre-existing degenerative changes, which are severe, I would recommend this patient should perform only secondary duties. She should avoid standing and walking. She should avoid kneeling, squatting, climbing and crawling activities.
At her deposition of March 22, 2013, Ms. Mazique was asked if she had ever been treated for problems with her right knee. She stated that she had gone to the Tulane Medical Center on one occasion for knee pain. She further stated that she had never had problems with her lower back and had never sought medical treatment for back problems. Her prior medical records show otherwise.
*340 As long ago as June 8, 2004, Ms. Ma-zique had been treated at West Jefferson Medical Center for injuries sustained when she was struck by a car. Among her complaints was shoulder, lower back and bilateral knee pains. On February 24, 2006, she was again treated at this facility for pain in her knees. At that time she reported that sometimes “my knees give out on me.” The emergency physician’s record states that the patient’s complains were of “bilateral knee pain x months.” The clinical impression was “bilateral knee pain-chronic.” Another medical record dated July 2, 2007, shows the results of x-rays indicating “degenerative changes in the [right] knee with decreased lateral joint spaces and | ^osteophyte formation.” The clinical impression is “degenerative changes in the knee.”
On February 4, 2010, Ms. Mazique was again struck by a car. Again she went to West Jefferson Medical Center where she was admitted with complaints of left and right knee pains, being at seven on a scale of one to ten. Testing revealed tricom-partment osteoarthritis. Then on October 26, 2011, claimant was again at the West Jefferson Medical Center, this time with complaints of right knee pain. The medical notes state that “[o]nset: the symptoms/episode began/occurred 2 weeks(s) ago, 10 year(s) ago.”
Cajun argues that the trial judge erred in her factual findings regarding alleged false statements willfully made by Ms. Ma-zique in order to obtain benefits, as well as the issue of whether the workplace fall caused her medical problems. Cajun further contends that there was no basis upon which to award penalties and attorney fees because the claim was reasonably controverted.
LAW AND ANALYSIS
When factual findings are at issue, the standard of review is manifest error. Stobart v. State through DOTD, 92-1328 (La.4/12/93), 617 So.2d 880. When there is conflicting testimony, factual findings should rarely be disturbed on appeal because the trier of fact has an opportunity to view the witnesses and their demeanor, while the appellate court only views a cold written record. Id. at 883. However, “where documents or objective evidence so contradicts the witness’s story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness’s story, the court of appeal may find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.” Id. at 882, citing Rosell v. ESCO, 549 So.2d 840 (La.1989).
[ 7Cajun contends that Ms. Ma-zique forfeited her right to compensation by making false statements in violation of La. R.S. 23:1208. The requirements for forfeiture under this statute are 1) that there is a false statement or representation, 2) that it is willfully made, and 3) that it is made for the purpose of obtaining benefits. Mendoza v. Stewart & Associates, 01-698 (La.App. 5 Cir. 12/26/01), 806 So.2d 737.
There is no question that Ms. Mazique made false statements when she denied any prior treatment for knee and back problems, except for one visit to the Tulane Medical Center. The medical records show conclusively that she had been treated for these conditions repeatedly for at least eight years. Particularly telling is the fact that on October 26, 2011, only four days before the incident at work, she had been to the West Jefferson Medical Center with pain in her right knee which she described at a level of ten on a severity scale of one to ten. Additionally, on cross examination at trial, she repeatedly tried to evade questions about these prior treat *341 ments, asserting that any such information was irrelevant to her claim. We also note that, of the treating physicians who saw claimant after the accident, only one, Dr. Steiner, is known to have asked about prior treatments, and his report shows that she denied any such treatments. It is equally clear that these misrepresentations were made in order to establish entitlement to benefits because of the work incident.
While we recognize the great deference to be given to factual findings made by the trier of fact, we are also mindful that such findings are subject to the manifest error standard of review and may be rejected when the entire record shows such error. Stobart, supra. Here, there is no question that Ms. Mazique made false statements willfully, and that these statements were made in order to obtain benefits. Any factual findings to the contrary were thus manifestly | Rerroneous, and must be rejected. Consequently, pursuant to La. 23:1208, Ms. Mazique has forfeited her right to benefits.
Cajun argues alternatively, that even if no forfeiture occurred, Ms. Ma-zique still failed to prove causation between the workplace incident and the alleged injuries. We agree. In Gabriel v. Delta Air Lines, Inc., 12-428 (La.App. 5 Cir. 1/30/13), 106 So.3d 1285, writ denied, 13-917 (La.5/31/13), 118 So.3d 399, this court noted that a worker’s compensation claimant bears the burden of proving a causal connection between the work accident and the resulting injury. It further noted that when symptoms of an injury are absent before an accident, and only manifest themselves after the accident, there arises a presumption of causation where medical or circumstantial evidence indicates a reasonable connection between the two events. Gabriel, at 1293.
As noted above, the information provided to Dr. Steiner concerning Ms. Ma-zique’s initial visit to The Ochsner Medical Center on the date of the incident contained no complaints of any knee injury. Dr. Gallagher was of the opinion that whatever injury there might initially have been would resolve in two to four weeks. After missing or rescheduling several appointments, Ms. Mazique was seen again on January 16, 2012. At that time, Dr. Gallagher’s opinion was that her pain was due to her arthritis in her right knee and degenerative disc disease in her back. He further stated that he did not see evidence of any new injury as a result of the fall in November. This is obviously a reference to the original fall of October 30, 2011. Dr. Waguespack does not give an opinion as to causation. However, Dr. Steiner was of the opinion that it would be impossible to state whether the fall aggravated Ms. Mazique’s pre-existing conditions, especially in view of what he considered “inconsistent and nonphysiologic findings.” That conclusion, taken in conjunction with Dr. Gallagher’s two to four week time frame for maximum medical recovery, |9renders any finding of a longer injury period clearly erroneous because not based on any medical evidence of record.
Cajun’s final argument is that even if it were to be determined that Ms. Ma-zique was entitled to benefits, the finding that the claim was not reasonably controverted, and thus attorney fees and penalties are due, is also unsupported by the evidence. Again, we agree. As the above summary of the evidence shows, there was a reasonable basis for Cajun to deny additional benefits, and any contrary finding was manifestly erroneous.
CONCLUSION
For the foregoing reasons, the judgment of the worker’s compensation judge award *342 ing benefits, penalties and attorney fees is hereby reversed, and judgment is entered in favor of Cajun Operating Company d/b/a/ Church’s Chicken, and The Hartford Insurance Company, dismissing Patricia Mazique’s claim for worker’s compensation benefits with prejudice.

REVERSED.

. On March 14, 2013, claimant was seen by Dr. Robert Steiner, an orthopedic surgeon, at the employer’s request. Dr. Steiner reports reviewing the Ochsner report of October 30, 2011, and notes that it makes reference to hand and back complaints, but "I do not see any indication of injury to the right knee.”