754 So.2d 324 (2000)
Joseph R. ROSSON, Plaintiff-Appellant,
v.
RUST CONSTRUCTORS, INC., Defendant-Appellee.
No. 32,789-WCA.
Court of Appeal of Louisiana, Second Circuit.
March 1, 2000.
*325 John S. Stephens, Shreveport, Counsel for Appellant.
Mayer, Smith & Roberts by Caldwell Roberts, Jr., Shreveport, Counsel for Appellee.
Before NORRIS, STEWART and PEATROSS, JJ.
STEWART, J.
In this workers' compensation case, the claimant, Joseph R. Rosson, appeals a judgment in favor of the defendant, Rust Constructors, Inc. ("Rust"), denying Rosson's request for workers' compensation benefits for an injury sustained while employed by Rust. The principal issue in this action is whether the workers' compensation judge (WCJ) was clearly wrong in denying Rosson's claim for workers' compensation benefits on the basis of a La. R.S. 23:1208 defense. We affirm.

FACTS
On April 10, 1998, Rosson sustained an injury on the job while working for Rust. Rosson was hit on the top of the head by a piece of falling angle iron which weighed approximately 42 pounds. At the time that the iron struck him, Rosson was wearing a hard hat.
Rosson's employer took him to the DeSoto General Hospital in Mansfield, Louisiana where he was treated and released. Rosson continued to complain of neck pain and headaches so his employer referred him to the company doctor in Shreveport, Louisiana.
He was treated by the company doctor for approximately two weeks. He was placed on light duty. After his condition failed to improve, he was referred to Dr. Anil Nanda, a neurosurgeon, for evaluation. At this time, Rosson complained of headaches, neck pain and back pain. Dr. Nanda scheduled Rosson for an MRI which showed that he had suffered disc changes at the C5-6 and C6-7 levels.
*326 Afterwards, Dr. Nanda sent Rosson for a myelogram CAT scan in June 1998, which more clearly showed disc disease at the C5-6 and C6-7 levels. Based on the results of the myelogram, Dr. Nanda recommended that Rosson undergo surgery at the C5-6 and C6-7 levels. Dr. Nanda testified that surgery would only stop the pain radiating down Rosson's arm, but had no guarantee that it would alleviate Rosson's headaches or neck pain.
Dr. Nanda's office attempted to get permission to perform the recommended surgery from Rust's workers' compensation insurer. Initially, permission was granted for the surgery. However, this permission was subsequently withdrawn, and Rosson was never allowed to undergo the recommended surgery. Subsequently, the instant lawsuit was filed.
Rosson's deposition was taken on October 30, 1998. During the course of this deposition, Rosson was asked about his past medical history. The following exchange took place at that deposition:
Q. What kind offor what reason did you go to the V.A. Medical Center in the last ten years?
A. I'm a disabled vet.
Q. I understand that you have the opportunity to get treatment there. I was interested in what kind of conditions warranted that?
A. I had a hearing disability working around all those jets. On the flight line it's not so bad but on the flight deck of the carriers there may be twenty, thirty planes right there right around you turning around and you can'tthere's no talking. You can't talk. It's allyou have to watch what you're doing. Anyway, I've got a loud shrill, just a ringing in my ears all the time. I can hear. I just can't make out what you're saying sometimes. Especially in a crowd. But for that and a cold or something.
Q. Any time you need to go to the doctor you go over there to the V.A.?
A. Yeah.
Q. Did you ever receive any treatment at the V.A. Hospital for any back or neck problems? (emphasis added)
A. No.
Following this deposition, Rust requested that Rosson execute a medical release so that they could obtain his medical records from the V.A. Hospital. After obtaining these records, Rust learned that on five occasions in 1996, Rosson sought treatment at the V.A. Hospital for neck and back pain.
Rosson initially sought treatment at the V.A. on August 4, 1996 and complained of severe pain that radiated down his right shoulder. He described this pain as a 10 on a scale of 1 to 10. He returned to the V.A. Hospital on September 2, 1996 complaining again of pain in his right shoulder which radiated down his arm into his hand and was concentrated on the outer aspect of his shoulder, arm, and the last two fingers of his right hand. Rosson returned to the V.A. again on September 4, 1996 for more pain medication for his neck, though he was not actually scheduled to return to the V.A. until September 6, 1996.
Rosson made his appointment on September 6, 1996 and again complained of pain in his right shoulder and numbness in his right arm and thumb. When he returned to the V.A. on October 22, 1997, he complained of the same symptoms. Rosson underwent a CAT scan at the V.A. on November 22, 1996 which showed possible spinal cord encroachment at the C5-6 level. These CAT scan results were labeled abnormal.
At the hearing in this matter, Rosson was questioned about his deposition testimony regarding the nature of his treatment at the V.A. Hospital. He explained his inconsistent answers as follows, "As far as I was thinking, everything was on the job. That's what I was thinking, on the job. I thought he asked me have I been seen for any other on-the-job spinal injuries. I said no." However, despite this attempt by Rosson to rectify his answer, *327 the WCJ found that the question was direct, as was the answer, and found that statements made by Rosson fell within the contours of a willful statement made for the purpose of obtaining workers' compensation benefits that were neither inadvertent nor inconsequential. As a result, the WCJ dismissed Rosson's suit for workers' compensation benefits. Thereafter, Rosson appealed.

DISCUSSION
By assignment of error, Rosson urges that the WCJ erred in failing to award workers' compensation benefits to Rosson based on a violation of La. R.S. 23:1208.
In a workers' compensation case, as in other cases, the appellate court's review is governed by the "manifest error or clearly wrong standard." Bruno v. Harbert International, Inc., 593 So.2d 357, 361 (La.1992). A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." Rosell v. ESCO, 549 So.2d 840, 844 (La.1989); Stobart v. State, Through Dept. of Transp. & Dev., 617 So.2d 880 (La.1993). The workers' compensation judge's factual findings are subject to the manifest error rule. Alexander v. Pellerin Marble & Granite, 93-1698 (La.01/14/94), 630 So.2d 706; Harrison v. Frank & Janie Seafood Restaurant, 30,845 (La.App.2d Cir.08/19/98), 718 So.2d 1003; Mitchell v. AT & T, 27,290 (La.App.2d Cir.08/28/95), 660 So.2d 204, writ denied, 95-2474 (La.12/15/95), 664 So.2d 456. Reasonable evaluations of credibility and inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart, supra.
La. R.S. 23:1208 provides penalties for willfully making a false statement or representation in connection with a workers' compensation claim, and provides for the forfeiture of workers' compensation benefits. The statute provides in pertinent part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
. . .
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
This statute encompasses any false statements or representations, including one concerning a prior injury, made specifically for the purpose of obtaining workers' compensation benefits; therefore, the statute generally becomes applicable at the time of the employee's accident or claim. Resweber v. Haroil Construction Co., 94-2708 (La.09/05/95), 660 So.2d 7; Bass v. Allen Cannery Co., Inc., 30,635 (La.App.2d Cir.06/26/98), 715 So.2d 142, writ denied, 98-2069 (La.11/06/98), 728 So.2d 395; Le-Blanc v. Grand Isle Shipyard, 95-2452 (La.App. 1st Cir.06/28/96), 676 So.2d 1157.
In enacting and amending La. R.S. 23:1208, the legislature made a policy decision that willful and deliberately false statements made specifically for the purpose of obtaining workers' compensation benefits are an attempt to defraud the workers' compensation system and should be dealt with harshly. The legislature has shown a continued effort over the years to make La. R.S. 23:1208 easier to enforce and to make its penalties stronger. It is clear from the history of the statute that the legislature intended that any false statements or representations willfully made for the purpose of obtaining benefits would result in forfeiture of those benefits and this legislative intent cannot be ignored.
The relationship between the false statement and the pending claim will be *328 probative in determining whether the statement was made willfully for the purpose of obtaining benefits. An inadvertent and inconsequential false statement would not result in the forfeiture of benefits.
The record in this case supports the WCJ's finding that Rosson willfully and deliberately made false statements about his medical history. The transcript shows that the question about prior treatment for neck or back injuries at the V.A. Hospital was straightforward and not subject to any misinterpretation by Rosson. When confronted with his false statement, Rosson failed to offer a satisfactory explanation, and it is difficult to believe that Rosson simply forgot about visits to the V.A. only one year before this accident.
Furthermore, the statements and representations made by Rosson were not inconsequential, but instead dealt directly with the exact physical complaints he sought to attribute to his alleged injury at Rust. Dr. Nanda suggested surgery for the same symptoms and injuries that Rosson sought treatment for at the V.A. Hospital before this accident.
Based on the evidence presented, we will not disturb the WCJ's ruling that Rosson's misstatements were made in order to obtain workers' compensation benefits.

CONCLUSION
For the foregoing reasons, we affirm the ruling of the WCJ. All costs of this appeal are assessed to the claimant.
AFFIRMED.