771 So.2d 728 (2000)
KLLM, INC.
v.
Norbert REED.
No. 00-295.
Court of Appeal of Louisiana, Third Circuit.
October 11, 2000.
*729 David A. Bowling, Wilson and Bowling, New Orleans, LA, Counsel for Plaintiff/Appellee.
Richard C. Broussard, Anderson and Broussard, Lafayette, LA, Counsel for Defendant/Appellant.
(Court composed of HENRY L. YELVERTON, SYLVIA R. COOKS, and MICHAEL G. SULLIVAN, Judges.)
SULLIVAN, Judge.
Norbert Reed, a long-haul truck driver for KLLM, Inc., injured his lower back and left hip on September 4, 1997, when he fell while exiting the cab of his eighteen-wheeler after an accident with two other vehicles. KLLM paid Mr. Reed workers' compensation benefits from that date through December 29, 1998, when it terminated payments upon learning that Mr. Reed failed to report to his treating physicians a previous work-related back injury of July 21, 1988 and a subsequent fall from a ladder on December 3, 1997. After a trial, the workers' compensation judge ordered the forfeiture of all benefits under La.R.S. 23:1208, finding that "the consistency with which Mr. Reed disclosed only particular information to particular physicians indicates that the false statements or representations were deliberate and willful" and that the false statements or representations were made for the purpose of obtaining workers' compensation benefits. For the following reasons, we affirm.

Factual Background
In addition to the present accident of September 4, 1997, the record reveals that Mr. Reed was involved in at least three other accidents. In July of 1980, while working at a shipyard, Mr. Reed sustained a herniated disc at C6-7 when a co-worker dropped his end of a steel plate that the two men were holding. For this injury, Mr. Reed underwent a cervical fusion and discectomy performed by Dr. Ricardo Leoni, a neurosurgeon in Lafayette, Louisiana, on September 1, 1981. On July 21, 1988, Mr. Reed re-injured his neck and injured his lower back and left hip in a work-related fall from a riding lawnmower. After this accident, Mr. Reed was seen over twenty times from 1988 through 1990 for chronic lower back pain and complaints of left hip pain at the Veterans' Administration (VA) hospital in Alexandria, Louisiana. Mr. Reed also returned to Dr. Leoni, who noted for this second injury: "His low back pain is really in the sacrum and goes into his left hip and thigh." Dr. Leoni further recorded: "His prognosis is guarded as he has been out of work for nearly two years." On December 3, 1997, four months after the present accident, Mr. Reed fell from a ladder in his home. Although he was still being treated by private physicians and physical therapists for the instant job-related injury, Mr. Reed returned to the VA hospital to get "checked out" because he was in severe pain the following morning.
After the present accident of September 4, 1997, Mr. Reed was first examined by an industrial medicine specialist who referred him to Dr. David Pope, an orthopedic surgeon in Alexandria. At his initial visit on September 9, 1997, Mr. Reed complained of neck and shoulder discomfort and a constant burning sensation in the lower back. Dr. Pope noted no obvious muscle spasm, but he observed decreased range of motion on all planes and tenderness of the paraspinal musculature over the left sacroiliac joint. Diagnosing a contusion to the left hip with a mild lumbar strain, Dr. Pope anticipated that Mr. Reed would reach maximum medical improvement in three to four weeks. However, on his return visit of September 22, 1997, Dr. Pope found "no significant improvement," with "slight fullness" and tenderness around the left iliolumbar ligaments. He ordered a physical therapy regimen and predicted a return to full duty in six to eight weeks. On October 13, 1997, Dr. Pope diagnosed "possible left SI dysfunction" after noting marked tenderness along the left sacroiliac joint and recording slow progress in the physical therapy program. *730 At that time, Dr. Pope referred Mr. Reed to Dr. Melanie Firmin for a steroid injection in the left sacroiliac joint. Mr. Reed did not return to Dr. Pope until February 18, 1998, after he had underwent the injection from Dr. Firmin and physical therapy from November 11, 1997 through January 5, 1998. Dr. Pope again diagnosed "possible left SI joint dysfunction" and recommended another injection as well as a functional capacity evaluation.
At his initial visit with Dr. Pope, Mr. Reed reported that he had undergone a surgical fusion performed by Dr. Leoni "approximately 17 years ago," but he did not mention the treatment that he received from the VA hospital or from Dr. Leoni for his complaints of lower back and left hip pain from the tractor accident in 1988. In completing a "Work-Related Injury Questionnaire" at Dr. Pope's office, Mr. Reed answered "No" to the questions, "Have you had any similar problems in the past?" and "Have you had any prior work-related or any other significant disabling injuries or illnesses?" Additionally, at his February 18, 1998 visit with Dr. Pope, Mr. Reed did not report the intervening fall from the ladder in December of 1997 or his treatment at the VA hospital after that accident.
On October 21, 1997, Mr. Reed was examined by Dr. David Muldowny, an orthopedic surgeon in Lafayette, Louisiana, for complaints of neck and lower back pain. Diagnosing cervical and lumbar sprains, Dr. Muldowny recommended physical therapy and MRIs of the affected areas. Mr. Reed returned to Dr. Muldowny on December 2, 1997, describing his pain in the past few weeks "as a rollercoaster" with "good days and bad." The results of both MRIs were normal, with the exception of the C6-7 fusion performed by Dr. Leoni. Dr. Muldowny considered Mr. Reed temporarily disabled from his job as a truck driver, and he ordered refills of his medications. When asked about previous injuries at his initial exam with Dr. Muldowny, Mr. Reed again reported only the cervical fusion required by his 1980 accident. His fall from the ladder occurred several hours after his second visit with Dr. Muldowny on December 2, 1997.
Dr. Jose Andino, an emergency medicine physician, examined Mr. Reed at the VA hospital on December 3, 1997, after his fall from the ladder the previous day. At that visit, Mr. Reed exhibited spasm from the mid back down and appeared to be in significant pain. He was given an intramuscular steroid injection and prescriptions for several medications, including Tylenol, Robaxin, and Fioricet. On January 14, 1998, Mr. Reed returned to the VA hospital because of an allergic reaction to one of the prescribed drugs. After reporting that his back was still hurting, Mr. Reed was given a prescription for eighty tablets of Percocet.
According to Dr. Andino, Mr. Reed did not indicate that he had a history of back pain or that he was undergoing physical therapy at that time. Dr. Andino was certain that any previous back pain would have been documented had Mr. Reed reported it. Based upon this history, Dr. Andino related the spasm to the fall from the ladder, but after reviewing Dr. Muldowny's notes of disabling back pain the day before, he stated that he could not separate the pain from the two incidents. The record indicates that the VA sought reimbursement for medical expenses from Mr. Reed's employer after learning of the present work-related accident.
On November 24, 1998, Mr. Reed was referred to Dr. Thomas Montgomery, an orthopedic surgeon in Lafayette, for an independent medical examination. Dr. Montgomery noted tenderness in the lower back and over the left sacroiliac joint, with "an exquisitely tender spot" with a palpable spasm. He also noted mild tenderness in the thoracic area and minimal tenderness in the cervical region. His impression was a cervical and lumbar strain, for which he recommended a short course of pain management and localized injections into the area of spasm. At this visit, Mr. *731 Reed related a history of "small back strains and neck strains prior to this injury and that he was completely normal prior to this injury. He would get checked by the V.A. and would be back at work." Mr. Reed did not mention the fall from the ladder in December of 1997 to Dr. Montgomery.
At trial, Mr. Reed testified that he did not report his history of back pain from 1988 through 1991 because he was in so much pain that he "just didn't remember" or "just didn't think about it." He further testified that he did not believe that the 1988 injury would have any effect on this claim for workers' compensation benefits because he had been able to drive eighteen-wheelers without any back problems from 1991 until the present accident in 1997. In describing the fall from the ladder, Mr. Reed testified that he slipped and landed on his feet when the bottom rung of the ladder cracked. He did not report this accident to Dr. Pope or to his physical therapists because he did not believe that it had anything to do with his compensation claim. He explained that he had experienced "throbbing" back pain before the fall from the ladder and that he eventually returned to that level of pain after the ladder incident.

Opinion
La.R.S. 23:1208 provides in part:
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.
. . . .
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
The only requirements for forfeiture of benefits under Section 1208 are (1) a false statement or representation (2) that is willfully made (3) for the purpose of obtaining or defeating any benefit or payment under the workers' compensation law. Resweber v. Haroil Constr. Co., 94-2708 (La.9/5/95); 660 So.2d 7. Section 1208 is a broadly worded statute that applies to any false statements or representations, including those concerning prior injuries, and the employer need not show that it has been prejudiced as a condition of forfeiture. Id.
Nonetheless, statutory forfeiture is a harsh remedy and, therefore, must be strictly construed. Benoit v. Frank's Casing Crew, 97-1522 (La.App. 3 Cir. 5/20/98); 713 So.2d 762, writ denied, 98-1697 (La.10/9/98); 726 So.2d 31. False statements that are inadvertent or inconsequential will not result in forfeiture. Menard v. Mama's Fried Chicken, 97-488 (La.App. 3 Cir. 3/6/98); 709 So.2d 303, writ denied, 98-956 (La.6/5/98); 720 So.2d 681. Whether an employee has forfeited his right to workers' compensation benefits is a question of fact that will not be disturbed on appeal absent manifest error. Smith v. Quarles Drilling Co., 99-171 (La.App. 3 Cir. 6/2/99); 741 So.2d 829, writ denied, 99-1949 (La.10/8/99); 751 So.2d 227.

Assignment of Error # 1
Although Mr. Reed acknowledges that he failed to disclose all of his accidents and resulting injuries to his medical providers, he contends that the workers' compensation judge erred in finding that these omissions were willfully made for the purpose of obtaining workers' compensation benefits. First, he cites his reasonable belief that neither the 1988 fall from the tractor nor the 1997 fall from the ladder had any effect upon the present claim, given that he had been asymptomatic for six years while working as a truck driver and that the ladder incident was insignificant. Second, he argues that his medical history, which includes an "anxiety neurosis," seizures, and hallucinations, demonstrates that he "suffers from a distorted view of reality" and that he "lacks *732 the ability to form the necessary intent" to defraud the workers' compensation system. Finally, he argues that his inclusion of the VA records in his answers to interrogatories negates any intent to conceal his medical history. As explained below, none of these arguments persuades us that the workers' compensation judge's findings were manifestly erroneous.
The record reveals that Mr. Reed sustained significant prior injuries, including a cervical fusion as the result of a 1980 accident and chronic lower back and left hip pain from a 1988 accident. As indicated in the VA records and in Dr. Leoni's notes, Mr. Reed's complaints from the 1988 accident, for which he was out of work for two years, were virtually identical to those from the present accident. Yet, Mr. Reed consistently disclosed only the older cervical injury to his two treating physicians, Drs. Pope and Muldowny. Further, Mr. Reed's detailed description of the present accident as reflected in Dr. Muldowny's initial report does not support his trial testimony that he was too confused or in too much pain to remember the 1988 accident and its resulting back and hip injury. Although Mr. Reed did list the VA hospital and Dr. Leoni as previous treating physicians in answers to interrogatories, he did so with the notation that he had "been treated by Dr. Ricardo Leoni 17 years ago," indicating that he referred only to the cervical injury and not the more recent lower back and left hip problems.
After falling from the ladder in December of 1997, Mr. Reed sought treatment from the VA hospital, even though he was being treated for similar complaints by private physicians and physical therapists at that time. The VA records do not support Mr. Reed's claim that the ladder accident was insignificant. Dr. Andino found Mr. Reed to be in significant pain the day after that incident, and one month later, Mr. Reed was prescribed eighty tablets of Percocet for pain that he attributed to the ladder accident. When Mr. Reed returned to Dr. Pope in February of 1998, he did not mention the subsequent accident or his treatment at the VA hospital. Instead, he told Dr. Pope that his back pain was aggravated by a car trip to Crowley, Louisiana.
In Jones v. Trendsetter Production Co., Inc., 97-299 (La.App. 3 Cir. 2/25/98); 707 So.2d 1341, writ denied, 98-793 (La.5/15/98); 719 So.2d 463, we reversed the workers' compensation judge's denial of forfeiture for the claimant's failure to disclose a prior back injury (for which he was out of work for two to three years), where the record revealed that the claimant obviously misrepresented his medical history to his treating physicians. Similarly in Menard, 709 So.2d at 305, we also reversed the workers' compensation judge's refusal to order forfeiture, finding that the claimant's denial of previous back injuries was not inadvertent or inconsequential because it went to "the crux of the matter," the causation of the claimant's present injuries. See also Varnado v. Winn-Dixie Louisiana, Inc., 98-301 (La. App. 1 Cir. 9/25/98); 720 So.2d 66 and Bass v. Allen Cannery Co., Inc., 30,635 (La.App. 2 Cir. 6/26/98); 715 So.2d 142, writ denied, 98-2069 (La.11/6/98); 728 So.2d 395.
"The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits." Rosson v. Rust Constructors, Inc., 32,789, p. 5 (La. App. 2 Cir. 3/1/00); 754 So.2d 324, 327-28, writ denied, 00-914 (La.5/26/00); 762 So.2d 1105. In the present case, Mr. Reed consistently failed to disclose only those accidents that produced symptoms substantially similar to those he attributes to the present accident. We find no error in the workers' compensation judge's determination that Mr. Reed willfully misrepresented his medical history and present condition for the purpose of obtaining benefits.

*733 Assignment of Error # 2

Mr. Reed next argues that the workers' compensation judge erred in ordering the forfeiture of all benefits without proof that those benefits "flowed from his misrepresentation" as held in Supreme Rice Mill v. Guidry, 98-1252, p. 3 (La. App. 3 Cir. 3/10/99); 737 So.2d 856, 858, writ denied, 99-961 (La.5/28/99); 743 So.2d 668. He argues that his right to receive workers' compensation benefits for the present accident cannot "flow" from his failure to disclose the 1988 fall from the tractor and the 1997 fall from the ladder because he was asymptomatic long before the present accident and he was indisputably disabled before he fell from the ladder. As explained below, we do not agree with Mr. Reed's interpretation of Supreme Rice Mill.
In Supreme Rice Mill, the employee was injured in 1994, began receiving benefits in 1996, and made a false statement in his deposition in 1998, after which his benefits were immediately terminated. In light of the employee's claim for "back due workers' compensation benefits" from 1994 through 1996, we remanded the case for a determination of whether the employee "was entitled to any such benefits which did not flow from the commission of the misrepresentation." Id. at 858. In Ledet v. Burger King/Sydran, 99-1380 (La. App. 3 Cir. 4/26/00); 763 So.2d 27, writ denied, 00-1512 (La.6/30/00); 766 So.2d 546, we relied on Supreme Rice Mill to hold that an employee's misrepresentation of mileage expenses resulted in the forfeiture of only his right to mileage reimbursements and not his right to indemnity benefits or medical expenses.
In the present case, Mr. Reed's misrepresentations are relevant to the causation and the extent of his present complaints. Under Resweber, 660 So.2d 7, the employer need not prove that it was prejudiced by the misrepresentation, only that the misrepresentation was willfully made for the purpose of obtaining workers' compensation benefits. In Menard, 709 So.2d 303, the initial dispute concerned only the employee's status as part-time or full-time, but her benefits were forfeited upon a finding that she denied prior back injuries and treatment because of the relationship between that information and the causation of her present injuries. We stated:
While the employer need not prove prejudice as a result of false statements for a successful 1208 claim, Resweber, 660 So.2d 7, in this case, Mama's Fried Chicken was clearly prejudiced by Ms. Menard's statements. Ms. Menard's claim would certainly have been handled differently by the defendant's insurer if Ms. Menard had answered the adjuster's question truthfully.
Id. at 305. Similarly, in Jones, 707 So.2d at 1349 (emphasis added), we stated: "Under the facts of this case, we believe that Jones would have been eligible for workers' compensation benefits despite his prior injury. However, we find that he forfeited his right to such benefits as a result of his false statements." As in Rosson, 754 So.2d at 328, Mr. Reed's misrepresentations "dealt directly with the exact physical complaints he sought to attribute to his alleged injury at [work]." We do not believe that Menard, Jones, and Rosson would have been decided differently under Supreme Rice Mill. We, therefore, find no error in the forfeiture of Mr. Reed's workers' compensation benefits.

Assignment of Error # 3
In his final assignment, Mr. Reed argues that the workers' compensation judge should have awarded him penalties and attorney fees because KLLM arbitrarily and capriciously terminated his benefits. As explained in Ard v. Orleans Material & Equipment, 98-312, p. 4 (La. App. 4 Cir. 12/29/98); 727 So.2d 1183, 1186, "[O]nce La.Rev.Stat. 23:1208 is found applicable and benefits are forfeited, the question of whether the employer was arbitrary and capricious in denying benefits or untimely in paying benefits becomes *734 moot." Accordingly, this assignment of error is without merit.

Decree
For the above reasons, the judgment of the Office of Workers' Compensation is affirmed at Appellant's cost.
AFFIRMED.