# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 09-128

MARVIN ARNAUD

VERSUS

SHAW CONSTRUCTION

\*\*\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 02
PARISH OF RAPIDES, NO. 07-08627
JASON OURSO, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

## MICHAEL G. SULLIVAN
## JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Michael G. Sullivan, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

Thomas J. DeJean
DeJean & Leger
806 South Main Street
Opelousas, Louisiana 70570
(337) 948-9066
Counsel for Plaintiff/Appellee:
    Marvin Arnaud

John J. Rabalais
Robert T. Lorio
Janice B. Unland
Rabalais, Unland & Lorio
5100 Village Walk, Suite 300
Covington, Louisiana 70433
(985) 893-9900
Counsel for Defendant/Appellant:
    Shaw Construction

**SULLIVAN, Judge.**

In this workers' compensation matter, Shaw Construction (Shaw) appeals a judgment rendered by the workers' compensation judge (WJC) in favor of Marvin Arnaud, its former employee, awarding him Supplemental Earning Benefits (SEBs), reimbursing him for all of his out-of-pocket medical expenses, and authorizing treatment by his choice of orthopedist. Mr. Arnaud answers the appeal, asserting that the WCJ erred in denying his original request for penalties and attorneys fees and seeking additional attorney fees on appeal. For the following reasons, we affirm the judgment in its entirety.

## FACTS AND PROCEDURAL HISTORY

Mr. Arnaud alleged that he injured his middle and low back on October 4, 2007, while working as a boiler maker/pipe fitter at Shaw. He testified that he was on a scaffold in a squatting position and pushing up a platform for a coworker to bolt into place when he felt his back "give" and fell to his knees. Mr. Arnaud immediately told his coworkers that he had hurt his back. Shortly thereafter, he reported his injury to a foreman, Melvin Jones, who brought him to the safety department where he was given an ice pack and told to sit in the "safety chair" for three hours. He was then told to return home and to take it easy for the rest of the day. The next day, Mr. Arnaud was seen by Dr. Luke Lee at Prime Medical at the bequest of Shaw and X-rays were taken. Mr. Arnaud had a second visit with Dr. Lee several weeks after his injury, and he was advised to treat himself with over-the-counter medication and exercise.

Ms. Connie Gill, the claims adjuster assigned to handle the workers' compensation claim for Shaw, took a recorded statement from Mr. Arnaud on

1

October 24, 2007. Therein, Mr. Arnaud repeatedly denied having sustained any previous back injuries, other than an occasional pulled muscle. Ms. Gill compiled an investigative report which indicated that Mr. Arnaud may have had up to five prior back injury claims. She also had a copy of Mr. Arnaud's post-hire questionnaire, wherein he had denied any prior back complaints or injuries. Because of the discrepancies in Mr. Arnaud's file, Ms. Gill became concerned that Mr. Arnaud may have been guilty of committing fraud to obtain compensation benefits, and she denied Mr. Arnaud's claim pending further investigation.

Mr. Arnaud filed this workers' compensation claim/petition on November 5, 2007, seeking wage benefits; authorization of medical treatment, including treatment by his choice of physician, Dr. John Cobb, an orthopedist; and penalties and attorney fees for Shaw's arbitrary and capricious handling of his claim. In its answer to the petition, Shaw asserted the affirmative defenses found in La.R.S. 23:1208 and 23:1208.1, contending that if Mr. Arnaud had willfully made any false statements for the purpose of obtaining benefits, his entitlement to benefits had been forfeited.

In mid-December of 2007, Mr. Arnaud filed a request for an expedited hearing to compel medical treatment. Following a hearing, the WCJ denied the motion and referred the matter to the merits. Thereafter, Mr. Arnaud sought treatment with Dr. Angela Neely, his family doctor, because he was experiencing continued pain in his low back that had begun to cause numbness and weakness in his legs. Mr. Arnaud underwent an MRI at the request of Dr. Neely. He was then seen by Dr. John Cobb, an orthopedist. After reviewing the MRI, Dr. Cobb diagnosed Mr. Arnaud with post-traumatic lumbar pain syndrome, sprain/strain of the lumbar spine, and symptomatic lumbar spondylolisthesis (forward displacement of a lumbar vertebra on the one

2

below it) with stenosis (narrowing of a passage or vessel) and probable radiculitis (inflammation of a spinal nerve root). Based on the history given to him by Mr. Arnaud and the mechanism of the injury, Dr. Cobb noted that it appeared that Mr. Arnaud's symptoms were a result of the on-the-job injury that occurred on October 4, 2007. He prescribed several medications to Mr. Arnaud, including a muscle relaxer and a narcotic pain reliever, and he recommended that Mr. Arnaud begin a physical therapy program. Dr. Cobb filled out a Work Status Report wherein he noted that "patient is unable to work pending treatment." In addition, Dr. Cobb informed Mr. Arnaud that he may, in the future, need an epidural steroid injection.

Mr. Arnaud missed several days of work following his injury due to his back "stiffing up" and his legs being numb. On January 8, 2008, he requested that he be laid off from Shaw because he was hurting and could not "go anymore."

At the request of Shaw, Mr. Arnaud was examined on February 20, 2008, by Dr. Douglas Bernard, an orthopedist. Because he thought that Mr. Arnaud's prior MRI scan was of poor quality, Dr. Bernard ordered a second MRI. After comparing the second MRI to X-rays that had been taken of Mr. Arnaud's lumbar spine in August of 2005 following a motor-vehicle accident, Dr. Bernard said that the MRI revealed basically the same thing as the earlier X-rays, i.e., degenerative disc disease, scoliosis (abnormal curvature of the spine), and spondylolysis (degeneration of part of a vertebra)/spondylolisthesis at the L-5 level. After taking a history from Mr. Arnaud and performing a physical exam, he found nothing that he could associate with an October 2007 work-related accident. Dr. Bernard was of the opinion that Mr. Arnaud could return to work in an unrestricted capacity and that he did not need any further treatment.

3

Trial took place on October 14, 2008, following which the WCJ issued his ruling from the bench. Written judgment was signed on October 22, 2008, awarding Mr. Arnaud SEBs from January 9, 2008, the day he resigned from Shaw, to the present, based on his average weekly wage of $1,464 per week; reimbursing him for all of his out-of-pocket medical expenses, including mileage; and authorizing treatment by Dr. Cobb, including an epidural steroid injection. Shaw's defenses under La.R.S. 23:1208 and 23:1208.1 were denied, as was Mr. Arnaud's claim for penalties and attorney fees.[1] Costs were assessed to Shaw.

Shaw appeals, asserting three assignments of error. First, Shaw alleges that the WCJ erred in holding that Mr. Arnaud did not violate La.R.S. 23:1208.1, thus forfeiting his entitlement of benefits. Next, Shaw claims that the WCJ erred in holding that Mr. Arnaud is entitled to SEBs and medical treatment. Finally, Shaw contends that the WCJ erred in holding that it was not entitled to a credit against SEBs for the period that Mr. Arnaud was incapacitated following a subsequent accident in which he broke his leg requiring surgery. Mr. Arnaud filed an answer to Shaw's appeal, asserting that the WCJ erred in denying his claim for penalties and attorney fees and seeking additional attorney fees on appeal.

**DISCUSSION**

The Louisiana Supreme Court set out the standard of review to be employed in workers' compensation cases in *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840, pp. 7-8 (La. 7/1/97), 696 So.2d 551, 556 (citations omitted):

---

[1]Louisiana Revised Statutes 23:1208.1 concerns the right of an employer to inquire into an employee's previous injury claims and the forfeiture of benefits for an employee's failure to truthfully answer such inquiry. Because Shaw has not alleged error in the denial of that defense, the correctness of that ruling is not at issue in this appeal.

Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error-clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one.

"The determination of coverage is a subjective one in that each case must be decided from all of its particular facts." *Jackson v. Am. Ins. Co.*, 404 So.2d 218, 220 (La.1981). A worker bringing a compensation action against his employer bears the burden of proving, as a threshold requirement, that he suffered "personal injury by *accident* arising out of and in the course of his employment." La.R.S. 23:1031(A); *Bruno v. Harbert Int'l Inc.*, 593 So.2d 357, 360 (La.1992). The word "accident" as used in La.R.S. 23:1031 is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La. R.S. 23:1021(1).

This court has held that, in light of that standard of review, "great deference is accorded to the [workers' compensation judge's] factual findings and reasonable evaluations of credibility." *Cent. Lumber Co. v. Duhon*, 03-620, p. 3 (La.App. 3 Cir. 11/12/03), 860 So.2d 591, 593, *writ denied*, 04-315 (La. 4/2/04), 869 So.2d 880 (quoting *Garner v. Sheats & Frazier*, 95-39 (La.App. 3 Cir. 7/5/95), 663 So.2d 57).

In making its ruling, the WCJ stated:

> Considering the law, evidence, and argument of counsel, the court finds that the claimant has met his burden of proof in proving an accident occurred in the job in the course and scope of employment on October 3, 2008 while he was working with a platform and injured his lower back.
>
> The court finds that SEB benefits are due from the day he left his job with Shaw, January 8, 2008 to the present. . . . We don't have the

exact information to calculate the SEB on a monthly basis, and I'm going to order claimant to submit that . . . and SEB will be calculated on that basis. . . .

Medical expenses - - the medical bills are described in the exhibits. Those medical expenses are ordered. Treatment with Dr. Cobb is ordered. The epidural steroid injections are ordered.

In terms of the fraud, defense's [sic] 1208 . . ., the court finds that defendants have failed to meet their burden of proof in proving those fraud defenses.

Concerning penalties and attorneys fees, the court finds that defendants have reasonably controverted this claim. I thought there was a credibility call that needed to be made and it's not been made until today by this court. Claimant is at least due benefits. The court understands the evidence that defendants had in their possession at the time they made the decision to deny benefits: the post-hire questionnaire, which indicated no prior back problems; the index report that described some prior back problems, which was in conflict with the post-hire questionnaire; and the recorded statement that they took of the claimant. The court finds it was reasonably controverted based on a credibility issue that was brought up by all of those circumstances.

### Did Mr. Arnaud violate La.R.S. 23:1208?

Louisiana Revised Statutes 23:1208 entitled "Misrepresentations concerning benefit payments; penalty" provides in pertinent part, as follows:

A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.

. . . .

E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

This court discussed La.R.S. 23:1208 in *Abbeville General Hospital v. Manor*, 07-1226, p. 3 (La.App. 3 Cir. 3/12/08), 980 So.2d 163,165, stating:

This statute is penal in nature and must be strictly construed in favor of the one receiving benefits. *Fontenot v. Reddell Vidrine Water District*, 02-439 (La.1/14/03), 836 So.2d 14. Under this provision, the

6

employer must prove: (1) there is a false statement or representation; (2) it is willfully made; and, (3) it is made for the purpose of obtaining or defeating any benefit or payment. *Resweber v. Haroil Constr. Co.*, 94-2708 (La.9/5/95), 660 So.2d 7.

Nevertheless, this court has held that "[b]enefits are not terminated under the section for false statements that are inadvertent or inconsequential, but only false statement[s] which are determined by the workers' compensation judge, as authorized by La.R.S. 23:1208 to be willfully made for the purpose of obtaining or defeating benefits." *Menard v. Mama's Fried Chicken*, 97-488, p. 2 (La.App. 3 Cir. 3/6/98), 709 So.2d 303, 304, *writ denied*, 98-956 (La. 6/5/98), 720 So.2d 681. "Whether an employee has forfeited his right to workers' compensation benefits is a question of fact that will not be disturbed on appeal absent manifest error." *KLLM, Inc. v. Reed*, 00-295, p. 6 (La.App. 3 Cir. 10/11/00), 771 So.2d 728, 731 (citation omitted).

At trial, counsel for Shaw got Mr. Arnaud to admit that he had not been completely truthful about any prior injuries to his back when asked in his post-hire questionnaire, his recorded statement, and at the December 2007 hearing on his motion to compel medical treatment. Shaw now argues that because it proved that Mr. Arnaud made multiple false statements about his physical condition, the WCJ erred in finding that Mr. Arnaud had not violated La.R.S. 23:1208 and thus had not forfeited his right to receive compensation benefits.

Mr. Arnaud counters that any prior injuries to his back were minor in nature and that he had not willfully made any false statements for the purpose of obtaining benefits. He explains that when presented with the evidence indicating that he had prior back complaints, he truthfully disclosed the circumstances surrounding each of those prior complaints. Mr. Arnaud submits that once Shaw had the investigative report compiled by Ms. Gill that raised the possibility that he may have had prior back

7

injury claims, it went into "defense mode" and began automatically denying all of his requests for additional treatment and benefits before conducting an investigation into the nature and extent of those possible prior back injury claims. He adds that the investigation done by Shaw was woefully inadequate and prolonged, and that most of the evidence that it is trying to use against him came from his own truthful testimony rather than from any investigation done by Shaw.

Whether Mr. Arnaud violated La.R.S. 23:1208 was an issue of fact to be determined by the WCJ. We have thoroughly reviewed the record, including the transcript and the exhibits, and find no manifest error in the WCJ's conclusion that Mr. Arnaud was a credible witness and that he did not willfully make any false statements for the purpose of obtaining compensation benefits. This assignment of error is without merit.

### *Is Mr. Arnaud entitled to SEBs and medical treatment?*

At trial, Shaw did not contest the fact that Mr. Arnaud suffered an on-the-job, injury producing, accident. It did dispute, however, the extent and duration of Mr. Arnaud's injury. Shaw submits that although Mr. Arnaud testified that Dr. Lee told him to return to work on light duty, Dr. Lee noted on the injury report form that Mr. Arnaud could return to his assigned duties. Shaw also points to a video surveillance tape which it offered as a trial exhibit which it claims shows that, despite Mr. Arnaud's claim in his deposition that he could only stand for twenty minutes without needing a break, he could actually stand for a much longer time without any apparent difficulty.

Mr. Arnaud counters that, in their medical records, Dr. Cobb and Dr. Neely related his symptoms of low-back pain and numbness/weakness in his legs and feet

8

to his October 4, 2007 on-the-job accident. He adds that Dr. Neely restricted him to light-duty work and Dr. Cobb restricted him from work pending treatment. At trial, Mr. Arnaud testified that he was still experiencing pain in his lower back and legs and that he felt unable to work a full-time job. He explained that since he left Shaw, he had bought and sold several old cars, bringing in an average income of less than $1,000 per month.

The WCJ determined that Mr. Arnaud met his burden of proving that an on-the-job accident which caused injuries to his low back occurred and that he was due SEB's from the day he left employment with Shaw to the present. He also ordered Shaw to authorize Mr. Arnaud's treatment with Dr. Cobb, including epidural steroid injections, and to reimburse Mr. Arnaud for the medical expenses that he had incurred. The applicable standard of review dictates that we afford great deference to the WCJ's factual findings. Based on our review of all of the evidence, we cannot say that the WCJ was clearly wrong in his award to Mr. Arnaud.

### Is Shaw entitled to a credit against SEBs due to Mr. Arnaud's subsequent injury?

Shaw claims that because Mr. Arnaud admitted on the stand that he was involved in a subsequent accident in which he sustained a broken leg requiring surgery, the WCJ erred in ruling that it was not entitled to a credit against SEBs for the period that Mr. Arnaud was incapacitated following that accident.

Mr. Arnaud suggests that any decision as to whether Shaw is entitled to a credit would be premature because the exact amount of SEBs due him will not be determined until he submits his monthly earning reports to the WCJ after this appeal is over.

9

As noted by the WCJ, Shaw did not present any medical evidence as to the extent and duration of Mr. Arnaud's injuries from his subsequent accident. Given the lack of foundation in support of Shaw's claim for a credit, coupled with the fact that the exact amount of SEBs due and owing to Mr. Arnaud has not yet been determined, we cannot say that the WCJ's decision to deny Shaw a credit against SEBs due to Mr. Arnaud was manifestly erroneous or clearly wrong.

### *Did the WCJ err in not awarding Mr. Arnaud penalties and attorney fees?*

This court addressed the issue of penalties and attorney fees in *Romero v. Northrop-Grumman*, 01-24, pp. 10-11 (La.App. 3 Cir. 5/30/01), 787 So.2d 1149, 1155-56, *writ denied*, 01-1937 (La. 10/26/01), 799 So.2d 1144 (citations omitted), wherein we stated:

> The determination of whether an employer should be cast with penalties and attorney fees is essentially a question of fact; we will not reverse the WCJ's finding on appeal absent evidence of manifest error. Penalties and attorney fees are available to a claimant when his employer does not provide workers' compensation benefits as required by law.
>
> . . . To avoid the imposition of penalties and attorney fees for the nonpayment of benefits, the employer has a continuing obligation to investigate, to assemble, and to assess factual information before denying benefits. The determination of whether an employer has reasonably controverted claims for the purpose of imposing penalties and attorney fees depends on the facts known to the employer at the time of its conduct. To reasonably controvert a claim so as not to be liable for statutory penalties, the employer must have factual or medical information of such a nature that it reasonably counters that provided by the workers' compensation claimant.

Mr. Arnaud asserts that the WCJ erred in its determination that Shaw "reasonably controverted" his claim and thus did not owe him penalties and attorney fees under La.R.S. 23:1201. As previously mentioned, he insists that Shaw failed to timely and thoroughly investigate his claim, including whether it had the right to deny

10

him benefits for his having allegedly made false statements about prior injuries to his back.

Whether an employer owes a claimant penalties and attorney fees under La.R.S. 23:1201 is a question of fact that this court will not disturb in the absence of a finding of manifest error. For the same reasons that we upheld the WCJ's finding that Mr. Arnaud was entitled to SEBs, we likewise uphold the WCJ's finding that Shaw had nonetheless reasonably controverted Mr. Arnaud's claim for benefits to the extent that it did not owe him statutory penalties and attorney fees. Just because the WCJ ultimately determined that Shaw's fraud defense was unfounded, we cannot say that the WCJ's finding that Shaw had reasonably controverted Mr. Arnaud's claim based on the entirety of the circumstances was clearly erroneous. Accordingly, we deny Mr. Arnaud's answer to appeal.

## CONCLUSION

For the foregoing reasons, the judgment of the WCJ is affirmed in its entirety. Costs of this appeal shall be split equally among the parties.

**AFFIRMED.**

11