STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**THE WOOD GROUP PSN, INC.**

**VERSUS**

**TODD ROMERO**

\*\*\*\*\*\*\*\*\*\*
**APPEAL FROM THE**
**OFFICE OF WORKERS' COMPENSATION, DISTRICT 04**
**PARISH OF LAFAYETTE, DOCKET NO. 13-04041**
**HONORABLE SHARON MORROW, PRESIDING**
\*\*\*\*\*\*\*\*\*\*

**SYLVIA R. COOKS**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, John E. Conery, and David Kent Savoie, Judges.

**AFFIRMED.**

Patrick A. Johnson
Allen & Gooch
2000 Kaliste Saloom Road
Suite 400
P.O. Box 81129
Lafayette, LA  70598-1129
(337) 291-1430
**ATTORNEY FOR PLAINTIFF/APPELLEE**
   The Wood Group PSN, Inc.

Henri M. Saunders
Saunders & Chabert
6525 Perkins Road
Baton Rouge, LA  70808
(225) 771-8100
**ATTORNEY FOR DEFENDANT/APPELLANT**
   Todd Romero

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

On February 3, 2013, Todd Romero was employed by The Wood Group PSN, Inc., working as an operator, maintaining satellite oil well platforms in Black Bay, Louisiana. On this date, Romero and a fellow employee were being transported by crew boat from headquarters to a well. Romero alleged when he stepped off the boat onto the platform, he twisted his left ankle. There were no witnesses who saw Romero twist his ankle.

Romero maintained he had to be assisted back to the vessel, where he was taken back to the main platform. He claims he then remained on the waterside docking platform before being taken ashore. There was testimony from Romero's co-worker and boat captain, challenging his version of events.

Later that day, Romero was treated at Plaquemines Medical Center and diagnosed with a sprained ankle. Subsequent to that diagnosis, Romero was seen twice by Dr. Gregory Gidman, an orthopedic surgeon. He then was treated by Dr. Castleman Greene, also an orthopedic surgeon, who referred him to his partner, Dr. James Lalonde, Jr. Eventually, Dr. Lalonde performed an arthroscopy of the left ankle on July 15, 2013 and fusion surgery November 20, 2013. Following the two surgical procedures by Dr. Lalonde, Romero saw Dr. Robert Steiner, for an independent medical examination.

It was discovered by the employer that, prior to the alleged accident on February 3, 2013, Romero previously injured the same left ankle in June 2006, while in the course and scope of his employment with Action Oilfield Services. Following a MRI, which disclosed a torn ligament, Romero underwent a lateral ligament tear and ankle reconstruction in August 2006, performed by Dr. Robert Brennan at Baton Rouge General Hospital. In connection with the 2006 work accident, he received workers' compensation benefits and was out of work, or

2

under physical restrictions, for approximately seven months. The evidence was uncontroverted that Romero failed to disclose his prior work-related ankle surgery to any of his medical providers. He also failed to disclose the prior condition to the present employer when he sought employment.

On May 28, 2013, the employer filed a 1008 Disputed Claim alleging Romero violated La.R.S. 23:1208 and committed fraud by intentionally misrepresenting his medical condition by failing to disclose the prior ankle injury and resulting surgery, thus limiting their knowledge of necessary facts to comment on the issue of causation. Romero filed an answer with an incorporated exception of vagueness and a reconventional demand asserting the employer failed to timely pay indemnity and medical benefits to him.

The matter proceeded to a hearing before the Office of Workers' Compensation on January 28, 2015. The WCJ, after accepting post-trial memoranda from the parties, rendered judgment in favor of the employer and against Romero, finding he violated the provisions of La.R.S. 23:1208 by making intentional and willful misrepresentations for the purpose of obtaining workers' compensation benefits. Therefore, the WCJ found Romero forfeited his entitlement to benefits, but declined to award restitution or assess a civil fine. The WCJ specifically found the sanction of forfeiture was a sufficient remedy. The WCJ rendered written reasons for judgment, which stated in pertinent part:

> Romero's excuses do not make sense under the circumstances and do nothing to counter the documented fact that every time he was asked about prior injuries, surgeries, MRIs or workers' compensation claims he either denied any such thing or left the answer blank. There is deliberateness to his consistently false responses and omissions that point overwhelmingly to an attempt to hide information. . .
>
> The false statements are those same statements to the doctors detailed above. The claimant himself admits the statements are false. The WCJ finds the false statements to be willful because Romero testified he did not disclose information about the 2006 accident, surgery and compensation claim because he had recovered 100% and did not think he needed to disclose the information because of his

3

recovery. The testimony evidences a deliberate thought process, a decision reached, therefor [sic] intentional or willful. . .

An important factor in the jurisprudence and in the fact finding process for an alleged violation of 23:1208 is the claimant's credibility. Mr. Romero was not credible in his testimony. His testimony about the circumstances surrounding the injury was often contradicted by his co-employee Colton Crain and the boat captain, Captain Pace. There is surveillance video that appears inconsistent with the complaints that were being made around the same time. His repeated response to the question of why he failed to disclose the prior injury sounded rote, and his demeanor was such that the WCJ wondered whether he was taking the proceedings seriously. There was nothing positive in his speech, eye contact, posture or phrasing to overcome the contradictions to his testimony or the overt misrepresentations. For these reasons, the WCJ finds that Romero violated provision (A) of La.R.S. 23:1208 and forfeits his entitlement to benefits. The further sanctions found in the statute are discretionary and the WCJ declines to award restitution or assess a civil fine, finding that the sanction of forfeiture is a sufficient remedy in this case.

Romero timely appealed the judgment of the Office of Workers' Compensation, asserting the WCJ "was clearly wrong in finding that [he] made intentional and willful misrepresentations for the purpose of obtaining workers' compensation benefits."

## ANALYSIS

Louisiana Revised Statutes 23:1208 provides in pertinent part:

A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provision of this Chapter, either for himself or for any other person, to willfully make a false statement or representation.

. . . .

E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.

The Louisiana Supreme Court in *Resweber v. Haroil Constr. Co.*, 94-2708, p. 14 (La. 9/5/95), 660 So.2d 7, 16, addressed the proof required to prove fraud under La.R.S. 23:1208:

4

By its plain words Section 23:1208 requires only that 1) the claimant make a false statement or representation, 2) the statement or representation be willfully made, and 3) the statement or representation be made for the purpose of obtaining workers' compensation benefits.

The legislature has made a policy decision that willful and deliberate false statements made specifically for the purpose of obtaining workers' compensation benefits is an attempt to defraud the workers' compensation system and should be dealt with harshly. The legislature has shown a continued effort over recent years to make Section 1208 easier to enforce and to make its penalties stronger.

The *Resweber* court noted the false representations must be made for the purpose of obtaining benefits, and must be more than inadvertent or inconsequential statements. The court stated:

It is evident that the relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. A false statement which is inconsequential to the present claim may indicate that the statement was not willfully made for the purpose of obtaining benefits. Clearly, an inadvertent and inconsequential false statement would not result in forfeiture of benefits.

*Id*. Section 1208 applies to false statements or representations regarding prior injuries; it applies to statements made to insurance investigators and physicians alike; and it imposes no requirement that the employer show prejudice. *Id*.

A review of the record reveals a consistent pattern of misrepresentation and/or omissions concerning Romero's prior ankle injury. In the Medical History Questionnaire filled out by Romero at Plaquemines Medical Center, where he was taken on the day of the alleged accident, Romero circled "N" for no to the question "Have you ever been treated for any of the following condition or diseases . . . Leg/knee/hip/ ankle injury." Romero also answered no when asked if he had ever had any orthopedic surgery. He also responded no when asked in the questionnaire if he had any "[p]rior work related accidents/Exposure w/ any other job" and if he had "ever filed an occurrence/accident report with a previous employer?" Likewise, he responded no when asked if he had ever filed for workers'

compensation insurance or received money as a result of a workers' compensation claim. At trial, Romero acknowledged he should have answered yes to the above questions, and there was no claim that he did not understand the questions.

The day after the accident, Romero was taken by the employer to be treated by Dr. Gidman. Romero filled out several forms, including a "Patient History" form. When asked "Have you ever had a similar injury," Romero left that response blank. He also circled none to the question "Have you ever had any of the following tests (circle those that apply): MRI X-ray CT Nerve Test Other." Romero also provided no response to the question Please list all surgeries you have had and the year they were performed." As to why he did not answer the questions accurately, Romero stated he did so because he thought he had fully recovered. He did not contend he misunderstood the questions. In his deposition testimony, Dr. Gidman discussed his personal exchanges with Romero:

A. . . . Have you seen any doctors, had any treatment, any loss of work to the area that I'm looking at.

Q. Okay. And he said no?

A. Right.

Q. Okay. And again, if Mr. Romero did have such doctor's visits or

A. Right. Because it's be import – important if he's had a previous ankle fracture or if he's had recurrent dislocations of the ankle.

. . . .

Q. Okay. With regards to past surgical history, would you just have asked him, "Have you had any past surgical history?"

A. Yeah, if you had any surgeries in the past.

Q. Okay. And what did he tell you?

A. He denied any surgeries.

. . .

Q. Okay. And to summarize based upon your examination of Mr. Romero he didn't disclose the prior surgery to you?

A. Right, he did not.

Q. He did not disclose the prior MRI to you?

A. He did not.

Q. He did not disclose to you the prior ankle injury?

A. He – he did not.

Based on his examination and Romero's complaints, Dr. Gidman diagnosed him with a work-related sprain placed him in a protective boot for immobilization of the ankle. In the follow-up visit with Dr. Gidman, he noticed no swelling and instructed Romero to remain in the boot and was maintained at light duty. Romero requested to see a doctor closer to his home.

During his deposition, Dr. Gidman was shown the medical reports from Romero's 2006 left ankle surgery. He noted the two injuries were very similar and the two surgeries were similar.

Following his two visits to Dr. Gidman, Romero was seen by Dr. Castleman Greene on March 19, 2013, complaining of left ankle pain. Dr. Greene recommended a MRI, a bone scan and prescription medication. He recommended Romero continue wearing the boot.

In the admission forms filled out for Dr. Greene, Romero repeatedly denies or does not answer inquiries as to prior ankle problems. In the medical history section, Romero left the answer blank as to past surgical history, and denied any prior "musculoskeletal problems," "difficulty walking" or "joint stiffness or swelling." At trial, Romero again acknowledged these omissions and misrepresentations, but attempted to justify them by stating he believed he had fully recovered from his prior ankle injury.

At trial, the employer presented video surveillance of Romero standing and walking without use of the boot during the time period he was being treated by

7

Drs. Gidman and Greene and under orders to remain in the boot at all times. One portion of the video surveillance showed Romero pushing his apparently stalled pick-up truck backwards while not wearing his boot. The WCJ, in her written reasons for judgment, specifically noted this video as inconsistent with Romero's complaints during the time period in question.

Dr. Greene referred Romero to Dr. Lalonde for further treatment. Romero complained of a significant amount of pain in his ankle. In his deposition, Dr. Lalonde stated he did not recall Romero informing him of the prior accident and surgery, and was clear such information would be something he would have liked to have known about. Dr. Lalonde did acknowledge the intake forms and medical history forms filled out by Romero had no indication of any prior surgery.

Dr. Lalonde diagnosed Romero with "anterior impingement of the ankle," which he explained was "[b]asically scar tissue on part of the ankle." Dr. Lalonde eventually recommended Romero undergo an arthroscopy of the ankle to clear up that problem. On July 15, 2013 the arthroscopy was performed by Dr. Lalonde. The surgical admission record has no mention of the prior 2006 surgery. The reason for this omission was explained by Dr. Lalonde:

Q. Why didn't you note the 2006 surgery [in the surgical admission record]?

A. Why didn't I?

Q. Yes, doctor.

A. I wasn't aware of it.

Following the arthroscopy, Dr. Lalonde recommended physical therapy for Romero. On October 10, 2013, Dr. Lalonde concluded that physical therapy was not helping and recommended Romero undergo a fusion surgery of the ankle, which was performed on November 20, 2013. Dr. Lalonde believed the surgery was successful.

8

Dr. Lalonde testified it was his belief that Romero "was able to do everything prior to the fall" and "that he was not having any problems." This opinion was based on Romero's history to Dr. Lalonde and was contradicted by the testimony of Colton Crane, a co-worker of Romero, who stated he saw Romero limping on his left ankle prior to the date of the accident.

On February 6, 2014, Romero was seen by Dr. Robert A. Steiner for an Independent Medical Examination. Dr. Steiner's report provides that Romero "denies prior problems with the left foot or ankle." Dr. Steiner was of the belief that Romero aggravated his pre-existing osteochondral lesions assuming that the history given of no previous complaints was correct.

Romero made several arguments in support of his assertion that the trial court erred in its judgment. He claimed in brief that he suffers from a lack of mental acuity sufficient to commit the fraud. He argues he did not graduate high school until he was twenty-two years old. Romero fails to acknowledge that he has since earned a T2 production license, a hydrolic crane operator card and became qualified as a first-aid responder. As the employer notes, these post-high school trainings and certifications do not support his argument that he lacks the mental acuity to commit fraud. Regardless, the record is clear that at no point during the proceedings did Romero assert that he did not understand any of the questions asked of him regarding his medical history. Thus, we find this argument lacks merit.

Romero also argues his fraud was harmless and/or the employer suffered no prejudice as a result of any fraud. This argument also lacks merit, as the jurisprudence is consistent that La.R.S. 23:1208 imposes no requirement that the employer suffers prejudice because of the false statements. *Resweber*, 660 So.2d 7; *Edwards v. Southeastern Freight Lines, Inc.*, 14-871 (La.App. 3 Cir. 2/4/15), 158 So.3d 227.

Lastly, Romero acknowledges he did not disclose his past ankle injury and resultant surgery, but contends these misrepresentations and omissions *were not made for the purpose of obtaining any benefit or payment*. This same argument was made to the WCJ, who thoroughly addressed it, and concluded the "statements were, indeed, made for the purpose of obtaining benefits." The WCJ noted this court in *KLLM v. Reed*, 00-295, pp. 8-9 (La.App. 3 Cir. 10/11/00), 771 So.2d 728, 732, explained "[t]he relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits." In *KLLM*, this court affirmed the WCJ's determination that the worker willfully misrepresented his medical history and present condition for the purpose of obtaining benefits. Much as here, the WCJ in *KLLM* found the worker "consistently failed to disclose" accidents that produced symptoms substantially similar to those he attributes to the present accident. *Id.* The WCJ in this case noted "there is a very strong relationship between the failure to disclose the prior left ankle surgery and the pending claim for treatment and disability due to the left ankle."

This court in *Jones v. Trendsetter Production Co., Inc.*, 97-299 (La.App. 3 Cir. 2/25/98), 707 So.2d 1341, *writ denied*, 98-793 (La.5/15/98), 719 So.2d 463, reversed the WCJ's denial of forfeiture for the claimant's failure to disclose a prior back injury (for which he was out of work for two to three years), where the record revealed that the claimant obviously misrepresented his medical history to his treating physicians. Similarly in *Menard v. Mama's Fried Chicken*, 97-488 (La.App. 3 Cir. 3/6/98), 709 So.2d 303, *writ denied*, 98-956 (La.6/5/98), 720 So.2d 681, we also reversed the WCJ's refusal to order forfeiture, finding that the claimant's denial of previous back injuries was not inadvertent or inconsequential because it went to "the crux of the matter," the causation of the claimant's present injuries. *Id.* at 305.

10

The evidence is uncontradicted that Romero consistently misrepresented his medical history to the numerous providers who treated him. The issue of whether an employee has forfeited his right to workers' compensation benefits is a question of fact that should not be disturbed on appeal absent manifest error. *KLLM*, 771 So.2d 728. For the reasons set forth above, we find no manifest error in the WCJ's determination that Romero willfully misrepresented his medical history and present condition for the purpose of obtaining benefits.

## DECREE

For the foregoing reasons, the judgment of the Office of Workers' Compensation is affirmed. All costs of this appeal are assessed to appellant, Todd Romero.

**AFFIRMED.**