# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 14-871

**MARK EDWARDS**

**VERSUS**

**SOUTHEASTERN FREIGHT LINES, INC.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 3
PARISH OF CALCASIEU, NO. 13-00259
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## ULYSSES GENE THIBODEAUX
## CHIEF JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, James T. Genovese, and David Kent Savoie, Judges.

**AFFIRMED.**

James Edward Burks
P. O. Box 16067
Lake Charles, LA 70616-6067
Telephone: (337) 474-6106
COUNSEL FOR:
    Plaintiff/Appellant - Mark Edwards

John Joseph Rabalais
Rabalais Unland
200 Caroline Court
Covington, LA 70433
Telephone: (985) 893-9900
COUNSEL FOR:
    Defendant/Appellee - Southeastern Freight Lines, Inc.

**Michelle A. Breaux**
**P. O. Box 747**
**Lake Charles, LA 70602-0747**
**Telephone:  (337) 493-8443**
**COUNSEL FOR:**
    **Plaintiff/Appellant - Mark Edwards**

**David Paul Bruchhaus**
**Mudd & Bruchhaus**
**410 East College Street**
**Lake Charles, LA 70605**
**Telephone:  (337) 562-2327**
**COUNSEL FOR:**
    **Plaintiff/Appellant - Mark Edwards**

**THIBODEAUX, Chief Judge.**

The claimant, Mark Edwards, appeals from an Office of Workers' Compensation (OWC) judgment granting summary judgment to the employer, Southeastern Freight Lines, Inc. (Southeastern), on the issue of fraudulent conduct based upon La.R.S. 23:1208.[1] Finding no genuine issues of material fact or law, we affirm.

## I.

## ISSUES

We must decide whether the trial court erred in granting summary judgment to the employer based upon the employee's violation of La.R.S. 23:1208.

## II.

## FACTS AND PROCEDURAL HISTORY

Mr. Edwards was hired as a driver for Southeastern, a Lafayette company, in August of 2012. On October 24, 2012, he alleges to have sustained an injury to his low back and legs while helping to unload a steel beam or cylinder. He characterized it as a pulled muscle, called his employer, and finished most of his deliveries.

Mr. Edwards was seen at the Baton Rouge General Hospital in the early morning hours on October 25, 2012, and was diagnosed with a lumbar region

---

[1]Louisiana Revised Statutes 23:1208 states, in pertinent part:

A.  It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment . . ., either for himself or for any other person, to willfully make a false statement or representation.

strain and lumbago.[2]  He denied prior back problems.  He did not return to work, and Southeastern began paying indemnity benefits.

On November 1, 2012, Mr. Edwards saw Dr. Adam Kennedy.  Mr. Edwards denied previous back problems.  Dr. Kennedy diagnosed lumbago.  He reported that Mr. Edwards' x-rays demonstrated a fracture dislocation or spondylolisthesis.[3]  Dr. Kennedy also reported spondylosis at L5-S1.[4]

On the morning of November 2, 2012, adjuster Selynthia Tate called Mr. Edwards at home and took a recorded statement.  She asked Mr. Edwards about previous work related injuries, prior injuries from automobile accidents, and previous back problems, all of which Mr. Edwards denied.  Weeks later, she received search results showing previous work-related automobile accidents and injuries and information regarding hospital treatment the day before the accident.  Benefits were temporarily terminated in early December, and Mr. Edwards filed the first of three 1008 claims.

Mr. Edwards underwent physical therapy which made matters worse, and he developed more symptoms.  On December 19, 2012, Mr. Edwards saw Dr. Neil Romero.  Mr. Edwards denied previous back or leg symptoms before the subject accident.  Dr. Romero reported x-ray and MRI results showing disc space collapse, disc protrusion, and advanced stenosis at L5-S1.  He ordered a steroid

---

[2]"Disc degeneration that affects the lumbar spine is referred to as lumbago.  Lumbago refers to generalized pain that is localized to the low back.  Symptomatic lumbar disc degeneration is most common in people of working age, usually between 30 and 50." Http://www.laserspineinstitute.com; and *Mosby's Medical Dictionary, 8th edition.* (2009) available at http://medical-dictionary.thefreedictionary.com/lumbago.

[3]Spondylolisthesis is "a term used to describe vertebral slippage.  It is characterized by the displacement of one vertebra over another, and slippage can occur in any direction." Http://www.laserspineinstitute.com.

[4]Spondylosis is defined as "age-related degeneration of the spine, either in the vertebrae, facet joints or intervertebral discs."  Http://www.laserspineinstitute.com.

injection. Later, a second MRI was requested for the low back, and a cervical MRI was also being sought. These tests were not approved.

Mr. Edwards' benefits were permanently terminated in March, 2013. From October, 2012, through March, 2013, Southeastern paid Mr. Edwards disability benefits of $11,248.00 plus medical benefits. Southeastern filed a motion for summary judgment seeking forfeiture of benefits based upon misrepresentations willfully made for the purpose of obtaining workers' compensation benefits under La.R.S. 23:1208. Southeastern also sought restitution for the benefits that it had paid.

The only error assigned and argued in Mr. Edwards' appellate brief is the granting of the motion for summary judgment. For the following reasons, we affirm summary judgment in favor of Southeastern on the issue of the fraudulent misrepresentations, but we decline to grant the restitution omitted in the OWC judgment.

III.

**STANDARD OF REVIEW**

When an appellate court reviews a trial court's judgment on a motion for summary judgment, it applies the de novo standard of review, "using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate." *Gray v. Am. Nat'l Prop. & Cas. Co.*, 07-1670, p. 6 (La. 2/26/08), 977 So.2d 839, 844 (quoting *Supreme Servs. & Specialty Co., Inc. v. Sonny Greer*, 06-1827, p. 4 (La. 5/22/07), 958 So.2d 634, 638). The motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue of material

3

fact and that the mover is entitled to judgment as a matter of law. La.Code Civ.P. art. 966(B).

IV.

## LAW AND DISCUSSION

Mr. Edwards contends that the OWC erred in finding that he violated La.R.S. 23:1208 and in granting summary judgment to Southeastern on that basis. Section 1208(A) states that it is unlawful for a person "to willfully make a false statement or representation" in order to obtain workers' compensation benefits. Section 1208(E) provides that "[a]ny employee violating this Section shall, upon determination by [the] workers' compensation judge, forfeit any right to compensation benefits under this Chapter." The *only* requirements for forfeiture of benefits under La.R.S. 23:1208 are: (1) a false statement or representation, (2) willfully made, and (3) for the purpose of obtaining workers' compensation benefits. *Resweber v. Haroil Constr. Co.*, 94-2708 (La. 9/5/95), 660 So.2d 7. Section 1208 applies to false statements or representations regarding prior injuries; it applies to statements made to insurance investigators and physicians alike; and it imposes no requirement that the employer show prejudice. *Id.*

In affirming the trial court's finding of fraud, the Louisiana Supreme Court in *Resweber* distinguished Section 1208 from Section 1208.1, interpreting the latter to apply to statements made on employment applications where no benefits are being sought. While Section 1208.1 is not applicable in this case, the court's distinctions are instructive in analyzing the criteria of Section 1208. Additionally, the claimant's attorney attempted to question the adjuster in this case on prejudice to the employer; thus, clarification will be beneficial. Under Section

4

1208.1, there is no forfeiture of benefits unless the false answer relates to a medical condition for which benefits are claimed or it affects the employer's reimbursement from the second injury fund.

Unlike Section 1208, Section 1208.1 requires a showing of prejudice and a written notice on the application of the consequences of untrue answers. In explaining the notice requirement, the court stated that "the critical consideration of the legislature in requiring notice in Section 1208.1 and not in Section 1208, was not the *type* of false statement made, but rather the *timing* of the statement and the *context* in which it is made." *Id.* at 13. Where an untrue answer is given prior to a workers' compensation claim, in a context completely unrelated to workers' compensation, the person may be unaware of the consequences; thus, notice of the potential forfeiture is required under Section 1208.1. *Id.* However, no notice is required for false statements and misrepresentations made willfully to obtain benefits under Section 1208 which is "generally applicable once an accident has allegedly occurred and a claim is being made." *Id.* at 14.

In response to one claimant's argument that Section 1208 was too broad because it resulted in forfeiture of benefits for any false statement, no matter how inconsequential, the *Resweber* court stated:

> This argument fails to recognize that the statute does not require the forfeiture of benefits for any false statement, but rather only false statements that are *willfully made for the purpose of obtaining benefits*. It is evident that *the relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits*. A false statement which is inconsequential to the present claim may indicate that the statement was not willfully made for the purpose of obtaining benefits. Clearly, an inadvertent and inconsequential false statement would not result in forfeiture of benefits.

5

*Id.* at 16 (first emphasis in original) (second emphasis added). With these tenets in mind, we now turn to our de novo review of this case.

Southeastern's motion for summary judgment asserted that Mr. Edwards gave false answers regarding previous accidents and injuries in a recorded statement given to the adjuster on November 2, 2012, following the alleged accident on October 24, 2012, in order to obtain medical and wage benefits. Southeastern further asserted that, in every step of the litigation, Mr. Edwards tried to correct or justify misrepresentations made previously, but each effort was proved false by the next recovery of evidence. Thus, there were additional misrepresentations in his answers to interrogatories, and then in his deposition. Southeastern also asserts misrepresentations in Mr. Edwards' affidavit in opposing the motion for summary judgment. The record on appeal bears out the assertions made by Southeastern. The statements given by Mr. Edwards concerning his prior medical history are contradicted by the significant evidence showing, not inadvertent and inconsequential falsehoods, but willful and repeated misrepresentations for the purpose of obtaining workers' compensation benefits.

### *Recorded Statement*

Adjuster Selynthia Tate called Mr. Edwards on the morning of November 1, 2012, following the alleged accident reported to his employer on October 24, 2012. The transcript of the adjuster's call to Mr. Edwards reveals the following denials:

Q    Have you ever had any prior work-related injuries?

A    No, ma'am. Never been injured on-the-job before.

6

Q    Any prior motor vehicle accidents that you were injured in?

A    No, ma'am.

Q    Do you have any medical conditions for which you take daily medicines for such as diabetes, hypertension, high cholesterol, gout, anything of that nature?

A    No, ma'am.

Q    Have you ever had any prior back problems?

A    No, ma'am.

Q    Any prior broken bones?

A    No, ma'am.  Never had a broken bone before.

Q    Any prior surgeries?

A    Besides appendix.

### *Responses to Interrogatories*

In spite of the foregoing denials of any prior work-related injuries, injuries from motor vehicle accidents, or broken bones, Mr. Edwards' responses to interrogatories listed *minor* injuries from two *non-work-related* automobile accidents and one broken bone.   Additionally, he listed seven work-related automobile accidents with no injuries to himself:

1988 Automobile accident Houston – sore neck

2003 Fall from horse at home – broken collarbone

2011 Automobile accident – left knee injury

1995 Work-related automobile accident; employer omitted – no injury

2008 Calcote Bus Lines  – New Orleans, La.  – no injury

_____ Calcote Bus Lines  – Branson, Mo. – no injury

2011 Calcote Bus Lines  – Kansas City, Mo.  – no injury

_____ Lott Oil Company – Many, La. – no injury

2006 Lott Oil Company – Rosepine, La. – no injury

____ Jefferson Davis Sheriff's Office – no injury

Only two injuries were admitted in the nine automobile accidents listed: (1) a "sore neck" from an automobile injury in Houston in 1988; and (2) a left knee injury in an automobile accident in 2011.

## *Adjuster's Index Search Results*

The adjuster, Ms. Tate, testified by deposition that she received the results of an index search on November 26, 2012.

The index search (ISO) revealed a December 27, 1998 accident while Mr. Edwards was working as a bus driver for Kerrville Bus Company. The insurance file shows that Mr. Edwards sustained injuries to his neck and shoulders and a sprain/strain to his lower back. He was off work and received workers' compensation benefits for approximately six weeks and settled a third party claim against the other driver for over $8,000.00. The existence of automobile accident injuries and work-related injuries were both categorically denied in his recorded statement. In his deposition, as shown below, Mr. Edwards will specifically deny an accident while working for Kerrville, will deny work-related injuries, and will deny receiving workers' compensation benefits at any time prior to the subject accident.

Significantly, the search revealed a February 27, 2012 personal automobile accident, occurring just eight months before the subject accident on October 24, 2012. Mr. Edwards was treated at American Legion Hospital in Crowley for injuries to his lumbar spine. Mr. Edwards' ex-wife testified by affidavit that Mr. Edwards sustained low back injuries in a February 27, 2012

accident and missed work with FedEx. In his recorded statement, Mr. Edwards denied that he had sustained any injuries from automobile accidents and denied that he had any prior problems with his back.

The search further revealed a February 7, 2005 commercial automobile accident causing injuries to Mr. Edwards' wrist, heal, and neck. This accident was not listed in his interrogatory responses or mentioned in his deposition.

Also revealed in the search was a November 26, 1993 commercial automobile accident in Jennings, Louisiana. A specific bodily injury was not shown. This accident was not listed in the interrogatory responses.

### Alexandria VA Hospital Records for October 23, 2012

Mr. Edwards' records from the Alexandria VA Health Care System (Alexandria VA) for October 23, 2012, the day before the subject accident, reveal that Mr. Edwards was treated as a walk-in with complaints of sudden onset of low back pain that began six days before the subject accident. He reported right flank and low back pain radiating into his right leg, with a pain level of eight over ten that was unrelieved by Tylenol or Ibuprophen. The progress notes state that the patient has a history of back pain, a kidney stone in 2000, and a hernia in 2004.[5] The notes state "acute on chronic back pain." Toradol and Etodolac were ordered,

---

[5]The Alexandria VA records introduced as evidence comprise 206 pages and appear to cover treatment from December, 1994, through August, 2013, almost twenty years. Each reference to these records is to the entire 206-page range, not to specific page numbers. Additionally, the 206 pages appear to have been shuffled like a deck of cards, with the pertinent complaints and treatments scattered helter-skelter throughout the entire 206 pages. In studying these records, we find that low back pain was a complaint in 2004; some pages state that no hernia was found in 2004; the amount of pain was unexplained; neuromuscular problems were suspected; naproxen was one of the medications given; a provisional diagnosis of lumbago was listed at one point and low back pain at another; and a prosthetic lumbar support was given.

as well as a KUB to rule out kidney stones. During the pain assessment, Mr. Edwards described right low back pain radiating down into his right leg and right groin area,[6] as a constant, burning, cramping spasm pain that had gotten worse within the last twenty-four hours. Mr. Edwards received an injection of thirty milligrams of Ketrolac which reduced his pain level from eight to five before he left the clinic.

### *Mr. Edwards' Deposition*

In his deposition, Mr. Edwards made numerous false and relevant assertions that belie information given above or revealed below. He continued to deny all work-related injuries, except to now admit that he sustained a bruised knee in the patrol car accident when he was with the Jefferson Davis Sheriff's Office. He specifically denied any job-related accidents or injuries while working for Kerrville Bus Company; and, he denied ever receiving workers' compensation benefits before the subject accident. While this 1998 accident occurred fourteen years before the subject accident, it is not inconsequential because it was a work-related accident wherein he sustained injuries to his neck and shoulders and a sprain/strain to his lower back. He was off work for six weeks and received workers' compensation benefits, all of which he denied. He continued to deny low back and neck injuries, or pain, or treatment, prior to the subject accident, except for the neck sprain in Houston in the late 1980s.

In his deposition, Mr. Edwards admitted to the February, 2012 non-work-related accident wherein he rear-ended a car on the way to work at FedEx. He stated that he went to the Crowley hospital by ambulance for his knee, which

---

[6]Groin pain was also listed in at least one of the medical records for the subject accident.

had slammed against the dashboard, and that he was diagnosed with a bruised knee. He specifically denied that he sustained any injuries to his back or to his neck in this accident. This was the February 27, 2012 accident revealed in the adjuster's ISO search above, with low-back injury confirmed by affidavit of Mr. Edwards' ex-wife. Medical records from Crowley's American Legion Hospital show that Mr. Edward's chief complaint was low back pain from a motor vehicle accident. He was diagnosed with lumbar sprain/strain and prescribed Hydrocodone and Acetaminophen for pain. Pursuant to x-rays, the radiologist reported grossly intact vertebral body height and alignment but disc space narrowing, osteophyte formation, and facet hypertrophic changes. His impressions were: (1) no acute osseous defect identified; and (2) lumbar spondylosis. Yet, Mr. Edwards specifically testified that he had never been diagnosed with a degenerative condition of his low back or his neck. He testified that, except for the Houston accident in the late 80s he had never received treatment to his neck or back to "any degree whatsoever."

He further testified that the only work missed for an injury in the past were the three days he missed at FedEx following his "knee" injury in February, 2012. Mr. Edwards' repeated denial of back injuries resulting from the February 27, 2012 accident is particularly relevant because this accident occurred just months before the subject accident and involved his low back.

Of further import, Mr. Edwards testified that his hospital treatment in the last ten years included diabetic care at the local Jennings VA hospital, pursuant to a diagnosis of diabetes in 2006. He stated that he had gone there a day or two before the subject accident for pain in his side, wherein he was x-rayed for kidney stones, and none were found. He did not discuss the same-day visit on October 23,

11

2012, to the Alexandria VA for back pain the day before the accident. These medical records are fully discussed above.

Less significant, but notable because of the volume of omissions, Mr. Edwards admitted to suing for the sore neck in the 1980s and for damages to his vehicle in an accident with an eighteen-wheeler in Jennings in the early 1990s. This Jennings accident was not listed in his interrogatory responses. It may correlate with the November, 1993 commercial automobile accident listed in the ISO report wherein no body part was given. Additionally, for the first time, Mr. Edwards also admitted to an accident in Lake Charles in the early 1990s while working for Louisiana Tank, an employer who was not listed among the other twelve employers shown in his interrogatory responses.

At the end of his deposition, Mr. Edwards stated that the discrepancies between his recorded statement and his interrogatory responses were because he thought the adjuster taking the statement was asking only about workers' compensation or on-the-job accidents. He would later assert that he was awakened by the adjuster's call at 7:30 in the morning and gave inaccurate information because he had taken pain medication the night before.

### Mr. Edwards' Affidavit

After Southeastern filed its motion for summary judgment, Mr. Edwards filed an opposition attaching his own affidavit, averring that any erroneous information was inadvertent and inconsequential. He stated that he had never had a "significant" or "severe" injury to his lower back before the subject accident. He then admitted to "normal injuries resulting from accidents" but stated that he had never been diagnosed with a collapsed disc, nor had he ever been seen

12

by an orthopedic surgeon for back pain.  However, as pointed out by Southeastern, Mr. Edwards had two previous accidents wherein he injured his back and was transported by ambulance to the hospital, one in 1998 and one in 2012.  He had denied both.  Moreover, he had a third incident of back pain reported at the Alexandria VA Hospital the day before the subject accident, which he had also denied, wherein he had been suffering for six days.

In the 1998 accident, where both drivers were taken to Baton Rouge General, Mr. Edwards reported going seventy miles an hour when he hit a car changing lanes, ran down an embankment, landed in the trees, and had $3,000.00 worth of damages to his vehicle.  The other driver also landed in the trees, suffered two broken arms, and sustained back and neck injuries.  The driver's father, a passenger, was hospitalized; and one passenger was deceased at the time the proof of loss was filed.  It is difficult to imagine that Mr. Edwards forgot such an accident.  Following this accident, for which he lost six weeks of work, Mr. Edwards was treated by Dr. Ray Boyer who referred him to Dr. Gregory Gidman, an orthopedist in Lafayette.  There, three weeks after the accident, Dr. Gidman gave him an injection of anti-inflammatory medication, Darvocet and Soma, and sent him to physical therapy.  He subsequently saw a chiropractor as well.  Thus, Mr. Edwards' affidavit misrepresents "normal" injuries and conditions of his lower back and neck suffered prior to the subject accident.

### Statements to Physicians

In addition to falsely denying previous injuries, events, and treatment regarding his neck and back in his recorded statement, his interrogatory responses, and his deposition, Mr. Edwards denied these events to the physicians who treated

him following the accident under consideration. On October, 25, 2012, Mr. Edwards went to the emergency room at Baton Rouge General Hospital, where he was diagnosed with lumbar region sprain and lumbago.[7] At that time he reported "no history of previous renal stones or kidney infections," and "no significant previous back history." Two days before, however, on October 23, he reported back pain for six days to the Alexandria VA and said he was tested for kidney stones there because of his previous kidney stones in 2000. On November 1, 2012, Mr. Edwards saw Dr. Adam Kennedy and denied previous problems with his lumbar spine. On December 19, 2012, he saw Dr. Neil Romero and denied back or leg symptoms prior to the subject accident on October 24, 2012.

### La.R.S. 23:1208 Criteria

As stated in *Resweber*, the only criteria for forfeiture of benefits under La.R.S. 23:1208 are (1) a false statement or representation, (2) made willfully, and (3) for the purpose of obtaining benefits. Based upon the foregoing, Mr. Edwards repeatedly and willfully gave false statements regarding his medical history, and the significant evidence is more than sufficient to show that these misrepresentations made *after* the alleged accident on October 24, 2012, were made for the purpose of obtaining workers' compensation benefits.

The facts in this case are similar to the facts in *Resweber*. There, the evidence showed that Resweber was treated by an orthopedist for his alleged on-the-job injury in 1991 and was diagnosed with herniated discs at L4-5 and L5-6. The insurer began paying benefits, then filed a disputed claim. The investigator took a recorded statement, asking Resweber about prior injuries and specifically

---

[7]We note that lumbago was one of the provisional diagnoses reported in the Alexandria VA in 2004.

14

about sports related injuries, but he denied ever having any back injury other than a pulled muscle.  In the medical history given to his doctor, the claimant indicated that he had been healthy, denied prior serious medical problems, and denied having low back pain with lower extremity symptoms prior to the alleged accident.

Evidence, however, contradicted those assertions and revealed that Resweber had reported low back pain due to weightlifting in 1988, and his physician suspected a herniated disc.  In 1989, he saw another physician for pain in his low back and legs, and the second physician's impression was lumbar disc and radiculopathy, likely at L4-5; he suggested conservative treatment and, if pain persisted, an MRI.  The OWC rejected arguments that the claimant did not make willful misrepresentations because "[m]aybe he just didn't remember," and found that all criteria of La.R.S. 23:1208 had been met.  *Resweber*, 660 So.2d at 15.  The Louisiana Supreme Court reversed this court and reinstated the OWC judgment.

### *Summary Judgment*

Mr. Edwards has argued that summary judgment should not be granted when a determination of willful intent is required.  However, the jurisprudence holds that a claim under the statute governing forfeiture of benefits for misrepresentations in relation to a claim for workers' compensation benefits is appropriate for resolution by way of the summary judgment procedure as long as there is no genuine issue as to the three criteria of La.R.S. 23:1208.  *Bibins v. St. Francis Cabrini Hosp.*, 00-133 (La.App. 3 Cir. 6/7/00), 768 So.2d 102, *writ denied*, 00-3015 (La. 12/15/00), 777 So.2d 1235; *Louisiana-I Gaming v. Rogers*, 10-1050 (La.App. 5 Cir. 9/27/11), 76 So.3d 81, *writ denied*, 11-2789 (La. 2/17/12), 82 So.3d 291; *Caye v. Slidell Travel Ctr.*, 02-208 (La.App. 1 Cir. 12/31/02), 837

So.2d 144, *writ denied*, 03-338 (La. 4/21/03), 841 So.2d 797. "A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *Hines v. Garrett*, 04-806, p. 1 (La. 6/25/04), 876 So.2d 764, 765-66).

When requesting summary judgment under the relevant law of La.R.S. 23:1208, the mover must provide sufficient, supporting, conclusive evidence of its three criteria, and then the non-mover must set forth specific facts, showing that there is a genuine issue of material fact in dispute for trial. *Bibins v. St. Francis Cabrini Hosp.*, 768 So.2d 102. A non-movant's mere allegation does not create a genuine issue of material fact so as to preclude summary judgment. *Id.*; La.Code Civ.P. art. 967.

Here, the record contains six volumes containing almost 1300 pages of documentation, plus a box of exhibits. The evidence overwhelmingly shows prior accidents, injuries, pain, and treatment involving Mr. Edwards' low back and neck, which he repeatedly denied. The repeated false statements, misrepresentations, and omissions were made in relation to, and *after* he reported to his employer, a job-related injury on October 24, 2012. This evidence, pursuant to *Resweber*, shows that Mr. Edwards made the false statements willfully in order to obtain workers' compensation benefits, meeting all three criteria of La.R.S. 23:1208. The final admissions in his affidavit that his previous low back injuries were only normal, not significant, and that he inadvertently provided inconsequential misstatements, do not create genuine issues of material fact to be resolved by a trial on the merits, pursuant to *Bibins*, *Rogers*, and *Caye*. Thus, we opine that reasonable people could only conclude that he willfully made

16

misrepresentations in order to obtain workers' compensation benefits, and summary judgment was properly granted.

*Motion for New Trial*

While Mr. Edwards' appeal did not address the motion for new trial, we note that the argument at the new trial hearing consisted of an assertion by his attorneys that there was evidence now in their possession that would have impacted the judge's decision on the summary judgment. They did not describe or present such evidence, even though they had been on the case for five months when the hearing was held. Their only other argument was that if Mr. Edwards had been properly prepared for his deposition by his first attorney, his deposition responses would have been different. These arguments do not satisfy the requirements for granting a new trial under La.Code Civ.P. arts. 1972 and 1973.

*Restitution*

Southeastern argues that it is entitled to restitution for the benefits paid to Mr. Edwards. Under La.R.S. 23:1208(D), restitution *may* be ordered for payments made before the employer became aware of the claimant's fraudulent conduct. Thus, restitution is discretionary. *Blane Devillier Trucking, Inc. v. Authement*, 03-590 (La.App. 3 Cir. 11/5/03), 858 So.2d 795; *Rhone v. Boh Bros.*, 01-270 (La.App. 4 Cir. 12/12/01), 804 So.2d 764. Here, the OWC did not address the issue of restitution, though it was requested by Southeastern in its motion for summary judgment. Such an omission by a trial court's judgment is considered a denial of the relief requested, *Hebert v. Shelton*, 08-1275 (La.App. 3 Cir. 6/3/09), 11 So.3d 1197.

We note that the injury claimed here was reported by Mr. Edwards as a probable pulled muscle the day it occurred, and the first denials of previous injuries or conditions occurred with the recorded statement on November 2, 2012. The first payment to Mr. Edwards was dated November 21, 2012, and the adjuster indicated that she received the first ISO results, "hits" showing other back and neck injuries, on November 26, 2012. Thus, the actual period between the first benefit paid and the first awareness of possible fraud was six days. We further note that Mr. Edwards indicated that he used his insurance card to pay for some of the medical expenses, and he paid premiums for his group insurance. Thus, it appears that the payments made by Southeastern's workers' compensation carrier, during the pertinent restitution period, were minimal. In affirming a denial of restitution, this court in *Authement*, 858 So.2d 795, pointed out that the employee had not worked since the accident, and therefore had no income with which to pay for medical services. Similarly here, we find no error or abuse of discretion in the trial court's denial of restitution. Thus, we affirm the denial.

V.

## CONCLUSION

Based upon the foregoing analyses, we find that Southeastern met its burden of proof under La.R.S. 23:1208, establishing that Mr. Edwards willfully made false statements and representations regarding previous low back injuries, conditions, and treatment, for the purpose of obtaining workers' compensation benefits. We further find that Mr. Edwards failed to present evidence of a genuine issue of material fact which could show that he did not make false representations for the purpose of obtaining workers' compensation benefits. Accordingly, we

find no error on the part of the trial court in granting summary judgment to Southeastern Freight Lines, Inc. Finally, we find that the trial court did not abuse its discretion in declining to grant restitution to Southeastern Freight Lines, Inc.

Thus, the trial court's judgment is affirmed in every respect. The plaintiff, Mark Edwards, is cast with costs for this appeal.

**AFFIRMED**.