STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

15-145


DARRELL WILTZ

VERSUS

LUBA WORKER'S COMP., ET AL.


**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 9
PARISH OF ST. MARTIN, NO. 12-01290
ELIZABETH CLAIRE LANIER, WORKERS' COMPENSATION JUDGE

**********

**JOHN D. SAUNDERS**
**JUDGE**

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Marc T. Amy, Judges.


**AFFIRMED, AS AMENDED.**


**Janice Hebert Barber**
**Barber Law Firm**
**111 Mercury Street**
**Lafayette, LA 70503**
**(337) 232-9894**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Darrell Wiltz**

**Matthew William Tierney**
**Tierney and Smiley, LLC**
**3535 S. Sherwood Forest, #233**
**Baton Rouge, LA 70816**
**(225) 298-0770**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Wallace Wiltz Concrete, Inc.**

**Eric J. Waltner**
**Allen & Gooch**
**P. O. Box 81129**
**Lafayette, LA 70598-1129**
**(337) 291-1400**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Luba Worker's Comp.**

**Jennifer B. Valois**
**The Barber Law Firm**
**111 Mercury Street**
**Lafayette, LA 70503**
**(337) 232-9894**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Darrell Wiltz**
    **Wallace Wiltz Concrete, Inc.**

**SAUNDERS, Judge.**

This is a workers' compensation case wherein the injured employee was the sole owner of a concrete finishing business. The Workers' Compensation Judge (WCJ) found that the employee violated La. R.S. 23:1208 by fraudulently and willfully misrepresenting facts in order to obtain benefits. As such, the WCJ found that the employee forfeited his workers' compensation benefits. Further, the WCJ ordered that the workers' compensation insurer was entitled to restitution from the employee in the amount of $54,570.53 under La. R.S. 23:1208(D).

The employee appealed. We find no error by the WCJ with the exception of ordering excessive restitution. We amend the WCJ's judgment to reflect that the employee owes the workers' compensation insurer $12,296.19 in restitution.

**FACTS AND PROCEDURAL HISTORY:**

Darrell Wiltz (Wiltz) is the sole owner of Wallace Wiltz Concrete, Inc., an incorporation begun by his father that pours and finishes concrete. Wiltz worked as both the manager of the business and as one of the laborers employed by Wallace Wiltz Concrete, Inc.

On October 21, 2009, Wiltz allegedly injured his lower back while lifting a tool used in the concrete finishing business. Wiltz filed a claim with LUBA workers compensation (LUBA), the workers' compensation insurance provider for Wallace Wiltz Concrete, Inc. Between October 21, 2009, and December 3, 2009, while LUBA paid for some medical treatment requested by Wiltz, it denied authorization for requested epidural steroid injections and at no time in this interval did LUBA pay any wage benefits. Wiltz then contacted LUBA to ascertain why he was being denied these benefits.

In response, on December 3, 2009, an adjuster, on behalf of LUBA, recorded a statement from Wiltz. In that statement, Wiltz admitted to having one previous,

minor back injury and denied ever having been in any vehicle accidents. Thereafter, LUBA began approving medical treatment benefits and paying Wiltz Total Temporary Disability (TTD) benefit.

On April 6, 2010, LUBA performed a claim index search on Wiltz due to growing suspicion it had regarding Wiltz's claim. The search revealed that Wiltz was involved in at least two vehicle accidents wherein he made claims and was represented by counsel. Thereafter, LUBA obtained medical records from a host of providers that indicated Wiltz had undergone at least three MRI's of his lower back due to complaints of pain. Further, the medical records indicated that Wiltz had various disc issues such as bulges or herniations in his lower back and one provider diagnosed him with lumbar disc disease.

On August 17, 2011, LUBA's adjuster called Wiltz and offered to settle the claim. When Wiltz refused, LUBA terminated Wiltz's benefits based on fraud under La. R.S. 23:1208.

On February 27, 2012, Wiltz filed a 1008 form for disputed compensation benefits. After discovery was conducted, a five-day trial was held. After taking the matter under advisement, the WCJ issued a judgment that Wiltz forfeited any workers' compensation benefits due to fraud under La. R.S. 23:1208. Further, the WCJ ordered that Wiltz pay LUBA restitution of $54,570.53 under La. R.S. 23:1208(D).

Wiltz filed an appeal to this court regarding the WCJ's judgment. In his appeal, he is alleging three assignments of error.

**ASSIGNMENTS OF ERROR:**

1. Was the WCJ manifestly erroneous, resulting in prejudice and legal error in awarding restitution, particularly full restitution?

2

2.    Was the WCJ manifestly erroneous, resulting in prejudice and legal error, necessitating de novo review when she incorrectly applied R.S. 23:1208 to statements made by WILTZ in the following five (5) ways: 1) the WCJ failed to identify an actual false statement, referring only to broad categories of statements and WILTZ' 12/3/2009 recorded statement as a whole, 2) the WCJ found that WILTZ violated R.S. 23:1208 with statements made prior to his work place accident of 10/21/2009, 3) the WCJ found that WILTZ violated R.S. 23:1208 with false statements WILTZ made to his disability insurance carrier, not in furtherance of a claim for workers' compensation benefits, 4) the WCJ penalized WILTZ under R.S. 23:1208(E) in his employee capacity for false statements made by WILTZ in his employer capacity, 5) the WCJ relied upon grossly erroneous facts, a 2005 accident resulting in a herniated lumbar disc, that are not supported by the Record in finding WILTZ was not credible and that WILTZ made false statements in violation of R.S. 23:1208 and 6) the WCJ failed to correctly apply R.S. 23:1208(D) resulting in a wrongful award of restitution in an excessive amount.

3.    That the WCJ was clearly wrong in failing to reinstate Appellee WILTZ' indemnity and medical benefits, in failing to order payment of WILTZ out of pocket medical expenses and in failing to award penalty and attorney fees for LUBA's arbitrary and capricious denial of this claim 8/17/2011 the same day WILTZ refused to setting this claim for LUBA' full authority: $80,000.00.

**PRELIMINARY MATTER:**

Wiltz seeks a de novo review of the WCJ's finding that he willfully made false statements for the purpose of obtaining workers' compensation benefits in violation of La. R.S. 23:1208. Further, Wiltz requests a de novo review of the WCJ's award of restitution in the amount of $54,570.83.

In support of his contentions, Wiltz summarizes his arguments from Assignment of Error Number Two, wherein he also asks that this court conduct a de novo review. To address this issue as both a preliminary matter and assigned error would be duplicitous. As such, we will address the issues raised by Wiltz in this preliminary matter when addressing Assignment of Error Number Two.

3

**ASSIGNMENT OF ERROR NUMBER ONE:**

Wiltz asserts in his first assignment of error that the WCJ was manifestly erroneous in awarding restitution, or, alternatively, manifestly erroneous in awarding excessive restitution. We find no merit to the assertion that the WCJ erroneously awarded restitution, however, we do find merit to the assertion that the WCJ erred in rewarding restitution of payments made before Wiltz's alleged fraud or after LUBA became aware of Wiltz's alleged fraudulent conduct.

Louisiana Revised Statutes 23:1208(D) states, in pertinent part, "[r]estitution may only be ordered for benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct." The legislature's use of *may* in La. R.S. 23:1208(D) indicates that the decision to reward restitution is discretionary. *Edwards v. Southeastern Freight Lines, Inc.*, 14-871 (La.App. 3 Cir. 2/4/15), 158 So.3d 227 (citing *Blane Devillier Trucking, Inc. v. Authement*, 03-590 (La.App. 3 Cir. 11/5/03), 858 So.2d 795; *Rhone v. Boh Bros.*, 01-270 (La.App. 4 Cir. 12/12/01), 804 So.2d 764). As such, we will review whether the WCJ abused its discretion in ordering Wiltz to pay LUBA restutition.

We find in Assignment of Error Number Two that the WCJ reasonably could have found that Wiltz willfully committed fraud for the purposes of obtaining workers' compensation benefits under La. R.S. 23:1208. Thus, we also find no abuse of discretion by the WCJ and affirm the decision to award restitution.

However, once the decision is made to reward restitution, the language of La. R.S. 23:1208(D) clearly delineates what can be restored, i.e., "benefits claimed or payments obtained through fraud and only up to the time the employer became aware of the fraudulent conduct." La. R.S. 23:1208(D). Therefore, in order for a payment to be eligible to be ordered paid back as restitution, it must have occurred

4

both after the willful, fraudulent conduct transpired for the purpose of obtaining benefits and before or up to the employer becoming award of the fraudulent conduct.

The initial willful, fraudulent conduct that reasonably could be construed to have been made to obtain benefits occurred on December 3, 2009, in Wiltz's recorded statement wherein he told the adjuster that he only had one previous incident of back injury around 2005 and that he had no previous car accidents. LUBA became wary of Wiltz's claim and ran a claims index report on April 6, 2010. It discovered that Wiltz had been in multiple car accidents and had more than one previous incident of back injury. On this date, LUBA knew of Wiltz's willful, fraudulent conduct. Thus, under La. R.S. 23:1208(D), the WCJ can only order restitution of benefits from payments made by LUBA occurring from December 3, 2009, up to April 6, 2010, for benefits obtained via willful, fraudulent conduct.

Our review of the record indicates that LUBA made TTD payments in the relevant time frame to Wiltz totaling $10,733.87. Wiltz argues that the TTD benefits he received for his missing of work from the date of his injury, October 21, 2009, through December 3, 2009, should also be deemed ineligible to be restored. We disagree, as the actual payment of those TTD benefits occurred on December 14, 2009, in a check totaling $2,333.45. This date clearly is both after Wiltz engaged in his willful, fraudulent conduct and prior to when LUBA discovered that conduct. Prior to his willful fraud, LUBA did not pay Wiltz TTD benefits. We feel this result is aligned with La. R.S. 23:1208(D)'s language indicating that the date of the fraud and the date the payment is made are relevant,

not the date or dates for which the benefits are intended to compensate the injured worker.

Further, after reviewing the record, we find that LUBA made medical payments totaling $1,562.32 from December 3, 2009, through April 6, 2010. LUBA's payment of medical benefits that occurred prior to Wiltz's December 3, 2009 willful, fraudulent conduct and those made after LUBA discovered that conduct are not eligible to be restored.

In summation, we find that the proper amount of restitution that Wiltz owes LUBA is $12,296.19. The WCJ ordered that Wiltz was to pay LUBA $54,570.53 for restitution. We find that this amount was erroneous and contrary to the language of La. R.S. 23:1208(D). As such, we amend the WCJ's judgment to reflect that Wiltz is to pay LUBA $12,296.19 in restitution.

**ASSIGNMENT OF ERROR NUMBER TWO:**

In his second assignment of error, Wiltz contends that the WCJ was manifestly erroneous, resulting in prejudice and legal error, necessitating de novo review when she incorrectly applied R.S. 23:1208 to statements made by him. We find that this contention lacks merit.

Louisiana Revised Statutes 23:1208(A) states, "[i]t shall be unlawful for any person, for the purpose of obtaining . . . any benefit or payment under the provisions of this Chapter . . . to willfully make a false statement or representation." Louisiana Revised Statutes 23:1208(E) states, "[a]ny employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter." As such, the requirements to forfeit benefits under La. R.S. 23:1208 are: (1) a false

6

representation or statement, (2) willfully made, and (3) for the purpose of acquiring workers' compensation benefits. *Edwards*, 158 So.3d 227.

Whether these three prerequisites to forfeiture of benefits under La. R.S. 23:1208 are met requires factual determinations and, as such, are subject to the manifestly erroneous/clearly wrong standard of review. *Dugas v. AutoZone, Inc.*, 12-727 (La.App. 3 Cir. 12/5/12), 103 So.3d 1271, *writ denied*, 13-45 (La. 2/22/13), 108 So.3d 775. This standard requires review the entire record to determine whether there exists reasonable support for the finding, not to determine whether the WCJ was correct. *Stobart v. State through Dep't of Transp. and Dev.*, 617 So.2d 880 (La.1993). Accordingly, Wiltz's request in the preliminary matter that this court conduct a de novo review on these issues is denied.

Wiltz first argues that the WCJ improperly utilized statements he made prior to this workplace accident to apply La. R.S. 23:1208. There is no evidence in the record that the WCJ used the multitude of false statements made by Wiltz to various entities to apply La. R.S. 23:1208. Contrarily, our reading of the WCJ's reasons for ruling is such that it merely pointed out the plethora of false statements by Wiltz to highlight his consistent course of conduct and to assess Wiltz's credibility.

Next, Wiltz contends that any misstatements he made were merely innocent error. Ascertaining the validity of this argument is not proper in the applicable standard of review. Rather, we must look to see if the record supports the WCJ's finding that Wiltz's made false representations that were willful for the purpose of obtaining workers' compensation benefits.

We find evidence in the record that reasonably supports a finding that Wiltz violated La. R.S. 23:1208. On December 3, 2009, Wiltz gave a recorded statement

to Scott Sonnier, an adjuster working on behalf of LUBA. In that statement, the following exchanges took place:

SONNIER:         Have you ever had back trouble before?

WILTZ:         Uh, back in '05 I had a little back trouble but that was all, I never had no surgery or nothin', it just.

SONNIER:         Do you know what, what it was? What caused it? Was it the same thing, were you liftin' stuff and you hurt your back?

WILTZ:         Uh, no I don't think so. I don't remember to be honest with you, I don't remember what happened but I did have some back problems back in '05.

SONNIER:         Um-hum. Do you remember what kind of treatment, if you received any treatment?

WILTZ:         I went to a chiropractor.

SONNIER:         Do you remember how long you treated with a chiropractor?

WILTZ:         Um, a couple of weeks, maybe a month.

SONNIER:         Then after a few weeks of the chiropractor treatment, you didn't have any trouble with your back?

WILTZ:         No. And I went to, I went to Dr. Cobb also, and uh, but when I went to him my back was, by the time I, I got to see him 'cause you know it's a long process.

SONNIER:         Um-hum.

WILTZ:         My back was doin' fine, I saw him and everything was fine.

SONNIER:         So you hadn't had any back trouble since '05?

WILTZ:         No. I'm saying '05 it was somewhere around there, '04, '05 something like that.

. . . .

SONNIER:         Any significant health problems?

WILTZ:              No.

SONNIER:            Any significant, uh, prior injuries? Broken bones?

WILTZ:              No.

SONNIER:            Car accidents?

WILTZ:              No.

In this excerpt of the statement, Wiltz made at least three false representations. First, according to the medical reports in the record, Wiltz has had back trouble on several occasions, not just once "back in '05," including, but by no means limited to a previous workers' compensation claim. Second, Wiltz mischaracterizes the severity of his previous back trouble. According to various MRI's, Wiltz was diagnosed with a left disc herniation at L4-L5 on January 30, 2007, a prominent disc bulge at L4-L5 on December 18, 2006, and a disc bulge at L4-L5 and at L5-S1 in 1994. Finally, it is clear from the record that Wiltz has been in at least two car accidents wherein he submitted a claim to having been injured, one in 1994 and another in January 1999. Additionally, Wiltz later admitted to having been in a third car accident in December 2006.

On June 15, 2009, just four months before this alleged work related accident and six months before his recorded statement, Wiltz saw Dr. Warren Degatur, Jr. The following exchange took place in Dr. Degatur's deposition:

> A      [Wiltz] went on to report to me that he had - - had a low back injury two years prior for which he had seen Dr. Cobb, and at that time a MRI showed two ruptured discs on the left. And Dr. Cobb had mentioned or suggested that surgery was a possible solution. But in the interim, he had gotten better. He was having no problems with nausea, vomiting or abdominal pain, which I believe he had, had earlier, and that's why I was mentioning it in this visit.

9

Q        Okay. So the information - - among the information that came from the patient was that he had a previous low back injury two years ago?

A        Correct.

Q        That he has seen Dr. Cobb for it?

A        Correct.

Q        That he had an MRI, and there's a quotation mark around two discs ruptured on left.

A        Correct.

Q        Does that mean that those were his exact words?

A        Correct.

. . . .

Q        I understand. And when I say his exact words, I was talking about Mr. Wiltz's exact words.

A        Correct.

This exchange can reasonably be interpreted to show that Wiltz had actual knowledge of the severity of his previous back injury and that his false representations in this regard were willful and for the purpose of obtaining workers' compensation benefits. Further, concerning the car accidents, the WCJ could reasonably find that Wiltz knew and recalled the accidents. Both accidents resulted in Wiltz obtaining counsel, and at least one of them resulted in Wiltz receiving settlement proceeds in excess of $2,000.00.

We do note that this court would have preferred the WCJ to specify which statement or statements it found Wiltz made in violation of La. R.S. 23:1208 and which statements it used in assessing Wiltz's credibility. Rather, the WCJ noted in its reasons for judgment a plethora of false statements made by Wiltz. This made review of this matter difficult as some of those false statements transpired outside

10

the narrow, relevant time frame under La. R.S. 23:1208 or were questionable as to whether they were false as was strenuously contested by Wiltz. However, given the state of the record, i.e. the WCJ's clear reference to the false statements given by Wiltz in his December 3, 2009 recorded statement, which occurred during the narrow, relevant time frame, and the applicable standard of review, we find no error by the WCJ in applying La. R.S. 23:1208 to find that Wiltz forfeited his workers' compensation benefits.

**ASSIGNMENT OF ERROR NUMBER THREE:**

Wiltz argues in this final assignment of error that the WCJ was clearly wrong in failing to reinstate his indemnity and medical benefits, in failing to order payment of his out of pocket medical expenses and in failing to award penalty and attorney fees for LUBA's arbitrary and capricious denial of this claim on the same day he refused to settle this claim for LUBA' full authority: $80,000.00. We find in Assignment of Error Number Two that no error was committed by the WCJ in terminating Wiltz's workers' compensation benefits under La. R.S. 23:1208. Accordingly, this assignment of error is without merit.

**CONCLUSION:**

Darrell Wiltz raises three assignments of error. While we find no error by the WCJ in awarding restitution, we find merit in Wiltz's assertion that the $54,570.53 in restitution ordered by the WCJ was excessive and amend the judgment to reflect the proper amount of restitution, $12,296.19, under La. R.S. 23:1208(D). We find no merit in Wiltz's remaining assignments of error. Costs of these proceedings are divided evenly between Wiltz and LUBA.

**AFFIRMED, AS AMENDED.**

11